PEOPLE v DUNCAN

PEOPLE v McINTOSH

Docket No. 56301. Argued January 8, 1976 (Calendar No. 7).—Decided November 28, 1977.

Albert Duncan and Leon McIntosh, former police officers, were convicted by a jury in Wayne Circuit Court, Joseph G. Rashid, J., of conspiracy to do a legal act in an illegal manner and solicitation of a bribe in connection with returning a complainant's property, which was confiscated by police during the investigation of a burglary. The prosecution introduced evidence of prior illegal acts, including solicitation of money from drug dealers by a witness acting for the defendants and protection of the dealers in their illegal operations, as bearing on the defendants' criminal intent in committing the acts charged in the information. The Court of Appeals, Lesinski, C. J., and Bronson and Van Valkenburg, JJ., affirmed (Docket No. 17197). Defendants appeal. *Held:* The convictions are affirmed.

Justice Ryan, joined by Justices Coleman and Fitzgerald, wrote:

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 14] 16 Am Jur 2d, Conspiracy § 35.
  29 Am Jur 2d, Evidence §§ 324, 326.
[3] 12 Am Jur 2d, Bribery §§ 6, 27.
  Admissibility, in prosecution for bribery or accepting bribes, of evidence tending to show the commission of other bribery or acceptance of bribe. 20 ALR2d 1012.
[4] 29 Am Jur 2d, Evidence §§ 298, 324.
[5, 27] 30 Am Jur 2d, Evidence §§ 1148–1159.
[6, 22, 28] 30 Am Jur 2d, Evidence §§ 1080, 1084.
[7] 29 Am Jur 2d, Evidence § 324.
[8] 75 Am Jur 2d, Trial § 708.
[9, 10, 12] 75 Am Jur 2d, Trial § 189 *et seq.*
[11] 63 Am Jur 2d, Prosecuting Attorneys § 27.
[13] 29 Am Jur 2d, Evidence §§ 322, 326.
[15] 21 Am Jur 2d, Criminal Law § 81 *et seq.*
[16, 18, 21, 23–25] 29 Am Jur 2d, Evidence § 324
[17, 26] 12 Am Jur 2d, Bribery §§ 11, 29.
[19, 20] 29 Am Jur 2d, Evidence § 320.
[29] 29 Am Jur 2d, Evidence §§ 324, 326.

1. The common thread which connects all the acts was the use of a police informer, a witness, by the defendants to obtain payoffs in return for the use of their official position to protect or benefit illegal activities. The relevance of the testimony depends on the nature of the defendants' activities, not on the criminal acts of the persons from whom the defendants solicited bribes. The fact that the identities of the benefited criminals or the nature of the protected criminal activities varied does not make the evidence of the "similar acts" irrelevant to the bribery alleged in the information.

2. Intent is an essential element of bribery and the prosecution may prove intent by offering evidence of a continuing course of conduct. Proofs of the defendants' "similar acts" admitted under the statute as tending to show intent are only required to be sufficient to convince the jury of the probability of the defendants' actions and are not required to be beyond a reasonable doubt. The people were not required to offer corroboration of the informer's testimony as to transactions in which she was an active participant. It was within the province of the jury to believe or disbelieve the witness.

3. Determination whether the probative value of testimony concerning "similar acts" is substantially outweighed by its unfairly prejudicial effect is within the sound discretion of the trial judge. The trial judge here carefully considered the matter and, when he concluded that the testimony could be admitted, carefully controlled the proceedings and specifically instructed the jury on the permissible uses of the testimony; there was no abuse of his discretion.

4. Appellate review of the prosecutor's closing argument is foreclosed in the absence of objection unless failure to consider the issue would result in a miscarriage of justice. The prosecutor's remarks in this case were either proper arguments based upon the evidence presented or responses to matters raised by the defendants in their proofs and closing argument. Certain of the latter remarks, although they could be seen as improper if standing alone, do not require reversal because of their responsive nature and because any unduly prejudicial effect could have been eliminated by a curative instruction to the jury, if one had been requested, upon a timely objection. However, the prosecutor's reference in this case to the evils of heroin trafficking is expressly disapproved because the evidence relating to heroin and the narcotics protection racket was admitted under the "similar acts" statute for a very limited purpose.

Justice Williams concurred in the result of Justice Ryan's opinion, but would decide the case on language in the pertinent

statute that says where the defendant's scheme, plan or system in doing an act is material, any like acts or other acts of the defendant which may tend to show the defendant's scheme, plan or system in doing the act in question may be proved. Otherwise, he would use Justice Ryan's analysis. In this case the prosecution testimony in question showed the defendants' scheme, plan or system and was admissible.

Justice Levin, joined by the Chief Justice, dissented. He wrote:

1. Criminal intent, *mens rea,* is an essential element in all felony prosecutions. Evidence of similar acts is admissible to prove criminal intent only where the defendant's intent cannot readily be inferred from the evidence probative of the other elements of the offense or where the defendant concedes that the act was committed but claims it was committed without felonious intent. The intent of one who solicits a bribe is not equivocal; felonious intent is readily inferred from the act of solicitation. There is no need, as a part of the people's case-in-chief, to characterize such an act with evidence of other unlawful solicitations to clarify the solicitor's intent.

2. Evidence tending to show that an accused committed an offense not charged in the information is not admissible for the purpose of showing his criminal disposition or a character trait or propensity to commit that offense to support an inference that he committed the charged offense. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the fundamental fairness and justice of the trial itself. If evidence of similar acts were admissible, the accused would be required to defend charges not described in the information or indictment, the predominant quality of the evidence would be to show the defendant's character, and the trial would be, for all practical purposes, completed and a verdict of guilty a mere formality.

3. While a payment or acceptance of money may be ambiguous or equivocal, the act of soliciting a bribe in unambiguous language is not. In this case no money was paid, nor was there any ambiguity in the language used, nor is the payment of money an element of the offenses of soliciting a bribe or conspiring to solicit a bribe. The disputed issue was not the intent with which the act was committed but whether it was committed. Here the relative credibility of the defendants and

of the witnesses for the prosecution was the issue. The defendants did not concede the act of solicitation and assert as a defense that their purpose was to entice or detect wrongdoing and their intent was therefore innocent. The acts attributed to defendants were unequivocal; solicitation of a bribe (in unambiguous language) is not an equivocal act justifying the admission of similar acts to characterize the solicitor's intent or clarify the meaning of the act.

4. The trial judge did not indicate any awareness that he could, in the exercise of discretion, exclude the similar acts evidence if he concluded that its unfair prejudicial impact outweighed its probative value. He did not exercise his discretion to exclude the evidence. Although he specifically gave the jury a cautionary instruction on the permissible use of the evidence, he did not control the scope of the proofs resulting from its admission. As a result of the admission of the similar acts evidence, the primary evidentiary focus became whether the defendants had accepted protection money from drug dealers. The charged offense, solicitation of a bribe from a suspected fence, was submerged in a plethora of charges and unsubstantiated innuendo regarding the uncharged "ongoing" conspiracy to accept protection money from drug dealers and an array of charges that Duncan and McIntosh had received bribes from a number of dope dealers years before on dates and occasions that the witness who supplied the *only* evidence tending to show that any such bribe had been solicited or paid could only vaguely or not at all recall. In this connection, the defendants were cross-examined extensively concerning their life styles, personal expenditures and general performance as police officers. The defendants did not receive a fair trial.

Affirmed.

55 Mich App 403; 222 NW2d 261 (1974) affirmed.

OPINION FOR AFFIRMANCE BY RYAN, J.

COLEMAN and FITZGERALD, JJ.

1. BRIBERY—CONSPIRACY—EVIDENCE—PRIOR CRIMINAL ACTS—RELEVANCE.

   *Evidence of an alleged drug protection racket admitted under the statute as "similar acts" tending to prove the defendants' intent is relevant to charges of conspiracy to do a legal act in an illegal manner and solicitation of a bribe where the common thread which connects all the incidents is the use of a police informer by the defendants, who were police officers, to obtain*

*payoffs in return for the use of their official position to protect or benefit illegal activities (MCL 768.27; MSA 28.1050).*

2. BRIBERY—CONSPIRACY—EVIDENCE—PRIOR CRIMINAL ACTS—RELEVANCE.

*The relevance of evidence of "similar acts" introduced under statute in a trial for conspiracy and bribery depends on the nature of the defendants' activities, not on the criminal acts of the persons from whom the defendants solicited bribes; the fact that the identities of the benefited criminals or the nature of the protected criminal activities varied from the acts charged in the information does not bar evidence of the prior acts as irrelevant because the statute requires "like acts", not identical acts (MCL 768.27; MSA 28.1050).*

3. BRIBERY—INTENT—EVIDENCE—COURSE OF CONDUCT.

*Intent is an essential element of the crime of bribery and may be proved by offering evidence of a continuing course of conduct.*

4. CRIMINAL LAW—EVIDENCE—PRIOR CRIMINAL ACTS.

*Proofs of a defendant's "similar acts" admitted under statute as tending to show intent are only required to be sufficient to convince the jury of the probability of the defendant's actions and are not required to be beyond a reasonable doubt (MCL 768.27; MSA 28.1050).*

5. CRIMINAL LAW—EVIDENCE—PRIOR CRIMINAL ACTS—CORROBORATION—CREDIBILITY.

*The people are not required to offer corroboration of a witness's testimony as to prior criminal acts of the defendant admitted under statute as tending to prove intent as to transactions in which the witness was an active participant; it is within the province of the jury to believe or disbelieve the witness (MCL 768.27; MSA 28.1050).*

6. CRIMINAL LAW—EVIDENCE—PRIOR CRIMINAL ACTS—PROBATIVE VALUE—PREJUDICE.

*Determination whether the probative value of testimony concerning "similar acts" is substantially outweighed by its unfairly prejudicial effect is within the sound discretion of the trial judge (MCL 768.27; MSA 28.1050).*

7. BRIBERY—CONSPIRACY—EVIDENCE—PRIOR CRIMINAL ACTS—PROBATIVE VALUE—PREJUDICE.

*A trial judge did not abuse his discretion in allowing testimony of a continued course of conduct involving payoffs to defendants, former police officers, from narcotics dealers to be presented to*

*the jury in a trial for conspiracy and bribery, although recognizing the potentially inflammatory impact of testimony linking police officers with narcotics dealers, where the judge carefully controlled the proceedings and specifically instructed the jury that the testimony was admitted as proof of the defendants' intent (MCL 768.27; MSA 28.1050).*

8. CRIMINAL LAW—ARGUMENT OF COUNSEL—PRESERVING QUESTION.

*Appellate review of a prosecutor's closing argument is precluded in the absence of objection unless failure to consider the issue would result in a miscarriage of justice.*

9. CRIMINAL LAW—ARGUMENT OF COUNSEL.

*A prosecutor's remarks are examined on appeal in the context in which they were made.*

10. CRIMINAL LAW—ARGUMENT OF COUNSEL—CURATIVE INSTRUCTIONS.

*A prosecutor's remarks to the jury were not sufficiently improper to require reversal of a conviction where the remarks were either proper argument based upon the evidence presented or responses to matters raised by the defendants in their proofs and closing argument, and where certain of the latter remarks, although they could be seen as improper if standing alone, do not constitute reversible error because of their responsive nature and because any unduly prejudicial effect could have been eliminated by a curative instruction to the jury if one had been requested upon a timely objection.*

11. DISTRICT AND PROSECUTING ATTORNEYS—CRIMINAL LAW—FAIR TRIAL.

*It is as much the duty of a public prosecutor to ensure that the criminally accused receive a fair trial as it is to use his best efforts to convict those guilty of crimes.*

12. CRIMINAL LAW—ARGUMENT OF COUNSEL—IMPROPER REMARKS.

*Reference by the prosecutor in his argument to the jury in a trial for conspiracy and bribery to the evils of heroin trafficking is expressly disapproved where the evidence relating to heroin and the narcotics protection racket was admitted under the "similar acts" statute for the limited purpose of showing the defendants' criminal intent as to the acts charged in the information (MCL 768.27; MSA 28.1050).*

CONCURRING OPINION BY WILLIAMS, J.

13. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—PRIOR CRIMINAL ACTS.

*Evidence of any like acts or other acts of a defendant which may*

tend to show the defendant's scheme, plan or system in doing the act in question may be proved where the defendant's scheme, plan or system in doing an act is material (MCL 768.27; MSA 28.1050).

14. BRIBERY—CONSPIRACY—EVIDENCE—PRIOR CRIMINAL ACTS.

Testimony of a continued course of conduct involving payoffs to defendants, former police officers, from narcotics dealers showed the defendant's scheme, plan or system and was admissible in a trial for bribery and conspiracy (MCL 768.27; MSA 28.1050).

DISSENTING OPINION BY LEVIN, J.

KAVANAGH, C. J.

15. CRIMINAL LAW—FELONY—INTENT.

Criminal intent, mens rea, is an essential element in all felony prosecutions.

16. CRIMINAL LAW—EVIDENCE—PRIOR CRIMINAL ACTS—INTENT.

Similar criminal acts are admissible to prove criminal intent only where the defendant's intent cannot readily be inferred from the evidence probative of the other elements of the offense or where the defendant concedes that the act was committed but claims it was committed without felonious intent (MCL 768.27; MSA 28.1050).

17. BRIBERY—SOLICITATION—INTENT.

The intent of one who solicits a bribe is not equivocal; felonious intent is readily inferred from the act of solicitation (MCL 750.505; MSA 28.773).

18. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—PRIOR CRIMINAL ACTS.

Evidence tending to show that an accused committed an offense not charged in the information is not admissible for the purpose of showing his criminal disposition or a character trait or propensity to commit that offense or support an inference that he committed the offense charged; the inquiry is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad record and deny him a fair opportunity to defend against a particular charge.

19. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—PRIOR CRIMINAL ACTS.

The general rule excluding evidence of similar criminal acts goes to the fundamental fairness and justice of the trial itself; if such evidence were admissible, the accused would be required to defend charges not described in the information or indict-

ment, the predominant quality of the evidence would be to show the defendant's character, and the trial would be, for all practical purposes, completed and a verdict of guilty a mere formality.

20. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—PRIOR CRIMINAL ACTS.

The prosecution is not allowed to prove the commission of another and distinct offense, though of the same kind with that charged, for the purpose of rendering it more probable in the minds of the jury that a defendant committed the offense for which he is on trial.

21. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—PRIOR CRIMINAL ACTS —INTENT.

Evidence of similar criminal acts must be necessary to the issue of intent to be admissible under statute; it may not be received where intent is admitted, or the nature of the offense on trial is such that proof of its commission carries with it an implication or presumption of criminal intent. (MCL 768.27; MSA 28.1050).

22. CRIMINAL LAW—EVIDENCE—PRIOR CRIMINAL ACTS—PROBATIVE VALUE—PREJUDICE.

In deciding the admissibility of evidence of similar criminal acts, the court must balance the actual need for the evidence in view of the contested issues, the other evidence available to the prosecution, and the strength of the evidence in proving the issue against the danger that the jury will be inflamed by the evidence to decide that because the accused was the perpetrator of the other crimes, he probably committed the crime for which he is on trial as well (MCL 768.27; MSA 28.1050).

23. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—PRIOR CRIMINAL ACTS —INTENT.

Evidence of similar criminal acts is not admissible to prove intent where the prosecution depends on the credibility of a witness whose story, if believed, leads ineluctably to the conclusion that the defendants knew what they were doing, or where if the act were proven intent would naturally be inferred (MCL 768.27; MSA 28.1050).

24. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—INTENT.

Intent is not in issue where evidence of intent is inferable if the proscribed act is proven and the defendant does not claim mistake or inadvertence.

25. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—PRIOR CRIMINAL ACTS
    —INTENT.

The admission of evidence of similar criminal acts cannot be
justified simply because the defendant pled not guilty of the
offense charged, which obliges the prosecution to prove all the
elements of the offense including criminal intent; it is neces-
sary that willfulness and intent be more than merely formal
issues in the sense that the defendant is entitled to an instruc-
tion thereon (MCL 768.27; MSA 28.1050).

26. BRIBERY—SOLICITATION—EVIDENCE—ADMISSIBILITY—PRIOR CRIMI-
    NAL ACTS—INTENT.

Soliciting a bribe in unambiguous language is not an equivocal
act which might justify the admission of evidence of similar
criminal acts to characterize the solicitor's intent or clarify the
meaning of the act; a payment or acceptance of money may be
ambiguous or equivocal but solicitation of a bribe is not, absent
a claim that intent was innocent, for example, to entice or
detect wrongdoing (MCL 750.505, 768.27; MSA 28.773, 28.1050).

27. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—PRIOR CRIMINAL ACTS.

Evidence of similar criminal acts is not admissible for the pur-
pose of resolving the issue of credibility (MCL 768.28; MSA
28.1050).

28. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—PRIOR CRIMINAL ACTS
    —DISCRETION.

A trial judge who failed to recognize that there were two sides to
the question of admissibility of proffered evidence of similar
acts, let alone that he could exclude such evidence if its unfair
prejudicial effect outweighed its probative value, did not exer-
cise his discretion in admitting it.

29. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—PRIOR CRIMINAL ACTS
    —FAIR TRIAL.

Police officers accused of soliciting a bribe from a suspected fence
were denied a fair trial as a result of admission into evidence of
similar acts and ancillary cross-examination of the defendants
in which the primary focus was whether the defendants had
accepted protection money from drug dealers years before
(MCL 768.27; MSA 28.1050).

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal
Attorney, Research, Training & Appeals, and

*Maura D. Corrigan,* Assistant Prosecuting Attorney, for the people.

*John M. Barr* for defendants.

RYAN, J. Defendants Duncan and McIntosh were found guilty by a jury of conspiracy to do a legal act in an illegal manner, MCLA 750.157a; MSA 28.354(1), and solicitation of a bribe, MCLA 750.505; MSA 28.773. Their convictions were affirmed by the Court of Appeals. 55 Mich App 403; 222 NW2d 261 (1974). We granted leave to appeal by order filed December 23, 1974. 393 Mich 773 (1974).

The defendants are charged with offering to return to Irving Broadnax, upon payment to them of $800, certain property held in the Inkster Police Department property room which was confiscated from Mr. Broadnax in connection with an earlier burglary investigation. The people's principal witness was Betty Harris, a former drug addict, convicted felon, and sometime informer.

The people offered Ms. Harris' testimony that she had acted as the go-between when defendants made their initial proposals to Mr. Broadnax. Over the objection of defendants' counsel, Ms. Harris further testified that she had acted as intermediary between the defendants and three local drug dealers in connection with payments for protection and information on police activities.[1]

The testimony concerning Ms. Harris' contact with the three drug dealers was offered and received as bearing upon the defendants' criminal intent in the transaction involving Mr. Broadnax.

---

[1] On cross-examination of Ms. Harris, defense counsel obtained the names of nine other alleged drug dealers who were said to have paid defendants with Ms. Harris acting as intermediary.

I

The first issue is the admissibility of the so-called "similar acts" evidence under MCLA 768.27; MSA 28.1050, which reads:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts, or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

Defendants raise four points with regard to the applicability of the statute in their case.

First, they challenge the relevancy of an alleged drug protection racket to the charges of conspiracy to do a legal act in an illegal manner and solicitation of a bribe.

Despite certain factual distinctions, the common thread which connects all the incidents was the use of Betty Harris by the defendants to obtain payoffs in return for the use of their official position to protect or benefit illegal activities. The focus of the analysis is on the nature of *defendants'* activities, not on the criminal acts of the persons from whom the defendants solicited bribes. The fact that the identities of the benefited criminals or the nature of the criminal activities protected varied is not a bar to the admissibility of the evidence. The prior incidents of bribery offered by the people were sufficiently similar to the bribery alleged in the information to qualify as admis-

sible evidence within the meaning of the statute.
The statute requires "like acts", not identical acts.
See, *e.g., State v Firestone*, 68 Ohio App 359; 41
NE2d 277, *app dism'd* 139 Ohio St 216; 38 NE2d
1023 (1942), and cases collected in Anno, *Admissibility, in prosecution for bribery or accepting bribes, of evidence tending to show the commission of other bribery, or acceptance of bribe*, 20 ALR2d
1012, 1034–1035. But *cf., People v Fiore*, 34 NY2d
81; 356 NYS2d 38; 312 NE2d 174 (1974).

Defendants next challenge the materiality of the
evidence.

The "similar acts" were offered to show defendants' intent with regard to the solicitation and
conspiracy. Before any proofs were offered, defense
counsel's opening statement informed the jury
that "our testimony will show along with the
prosecution's testimony that there was talk of a
bribe". The proofs did show numerous conversations between Mr. Duncan, Mr. McIntosh, Ms.
Harris and Mr. Broadnax in varying combinations,
discussing the sum of $800 to be paid to defendants for the return of Mr. Broadnax's property
from the police station. The crucial differences in
testimony were that Mr. Broadnax and Ms. Harris
testified that the defendants initiated the scheme.
The defendants testified that Mr. Broadnax and
Ms. Harris initiated the scheme and that the
defendants only went along with it so as to catch
Mr. Broadnax in a crime. With regard to the
conspiracy count, the evidence of the four principal witnesses showed the discussions and apparent
agreement to return the property for $800. The
disputed issue was the intent of the defendants at
the time.

By pleading not guilty and disputing intent by
their proofs at trial, defendants placed their intent

in issue. *People v Reading,* 307 Mich 616; 12
NW2d 482 (1943); *People v McElheny,* 221 Mich
50; 190 NW 713 (1922). We have previously held
that the prosecution may prove intent by offering
evidence of a continuing course of conduct. *People
v Johnston,* 328 Mich 213; 43 NW2d 334 (1950).

*Johnston* involved payments to a prosecuting
attorney for protection of houses used for gam-
bling and prostitution. Evidence of other payments
to defendant for the same purpose from the same
and other individuals received during the four
years prior to the incident alleged in the informa-
tion was held properly admitted as bearing on the
issue of intent. In the case at bar the people
offered three other incidents of bribery as bearing
on the intent of defendants in their relations with
Broadnax. The evidence of a repeated course of
conduct tended to show the intent of defendants in
doing the acts alleged and was therefore material
and admissible under the statute.

Defendants also contend that the similar acts
were not "proved" in the manner required by the
statute. It is argued that although the people need
not prove the alleged similar acts beyond a reason-
able doubt, the proofs must at least convince the
jury of the probability of the defendant's actions.
The evidence of similar acts in this case is at-
tacked as mere uncorroborated testimony of a
witness who had expressed a desire "to get the
defendants in trouble". Defendants cite *People v
Davis,* 343 Mich 348; 72 NW2d 269 (1955), in
support of their argument. We do not read the
relevant language of *Davis* [2] to require any further

---

[2] In *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), we noted at
page 365:

"While we are in agreement with defense counsel that such acts if
admitted may bear on intent only if the jury is first convinced that
they had been perpetrated by the accused, we are of the opinion that

proof than was presented here. *People v Allen,* 351 Mich 535; 88 NW2d 433 (1958), also cited by appellants, requires only that the proofs be sufficient to convince the jury of the probability of defendants' actions. The people were not required to offer corroboration of Ms. Harris' testimony when she was testifying as to transactions in which she was an active participant. It was within the province of the jury to believe or disbelieve the witness.

Finally, defendants argue that the probative value of the similar acts testimony was outweighed by its unduly prejudicial impact. It is well settled that the determination of whether the probative value of similar acts testimony is substantially outweighed by its unfairly prejudicial effect is within the sound discretion of the trial judge. See *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973), and authority cited therein.

Like the Court of Appeals, we recognize the potentially inflammatory impact of testimony linking police officers with narcotics dealers. However, we also recognize the relevance of this testimony as tending to show a continuing course of conduct involving payoffs. As noted by the Court of Appeals below, the trial judge carefully considered the matter and, when he concluded that the testimony could be presented to the jury, carefully controlled the proceedings and specifically in-

---

the charge made this point sufficiently clear. The court charged that proof of previous difficulties may be considered as bearing upon intent and motive. He admonished the jury that they were the sole judges of the credibility of the various witnesses. Inasmuch as defendant categorically denied all of the previous acts, it was sufficiently clear that they must disbelieve him and believe the other witnesses before considering those acts as bearing on his intent. The court further said that such acts 'may be *proved* and may be considered.' We think the defendant was adequately protected and no reversible error committed in this regard."

structed the jury on the permissible uses of the testimony.[3]

We find no abuse of discretion by the trial judge in allowing the similar acts testimony to be presented to the jury in this case.

## II

Defendants' second major contention on appeal is that they were denied a fair trial because of improper argument by the prosecutor. The people's closing argument is alleged to contain at least three instances of impropriety sufficient to require reversal.

Because no objection was made to any of the

[3] A detailed instruction on the uses of the similar acts testimony was given upon the introduction of the testimony and in the jury charge. The following is an excerpt from that portion of the jury charge dealing with the similar acts testimony:

"Now, I say to you, ladies and gentlemen, it is clearly the law in this state that these proofs are admitted or this evidence is admitted not to show a general disposition of proximity to crime, but it is offered to show intent, motive, scheme, plan, design or system, with respect to the conspiracy or the solicitation, because both of these crimes contain the essential element of the existence of intent and agreement and an intent to solicit the commission of an offense, to solicit the payment of a bribe.

"Now, let me add to that language by saying too, quite emphatically though, that testimony is offered for that purpose and that alone, and you may utilize that testimony if you so choose to assist you in regard to what? the question of intent, plan, scheme, design, but not the guilt or innocence of these defendants as charged in this information.

"You are to deliberate with regard to the guilt or innocence upon the charge as established in the information, as claimed in the information, you are not to deliberate upon the guilt or innocence of the defendants in connection with these other offenses which were permitted to be shown you. I say to you that this testimony is offered not as to guilt or innocence, in this case per se and in and of itself, but merely to show the existence of plan, scheme, or design. As far as this case is concerned, you are to consider the charge in the information here alone, but you may consider these other similar acts in determining whether or not there was scheme, intent, motive, you understand. All right. Again not bearing upon guilt or innocence here in this information but for the purposes I have indicated to you."

prosecutor's closing arguments at trial, appellate review is foreclosed unless our failure to consider the issue would result in a miscarriage of justice. *People v Alcala,* 396 Mich 99; 237 NW2d 475 (1976); *People v Hancock,* 326 Mich 471; 40 NW2d 689 (1950); *People v Zesk,* 309 Mich 129; 14 NW2d 808 (1944); *People v Connors,* 251 Mich 99; 230 NW 931 (1930); *People v Goldberg,* 248 Mich 553; 227 NW 708 (1929); MCLA 769.26; MSA 28.1096.

We examine the prosecutor's remarks in the context in which they were made. *People v Allen,* 351 Mich 535; 88 NW2d 433 (1958).[4] The prosecutor's remarks in this case were either proper argument based upon the evidence presented or responses to matters raised by the defendants in their proofs and closing argument. Certain of the latter remarks, although if standing alone could be seen as improper, do not constitute reversible error in this case because of their responsive nature, *People v Dersa,* 42 Mich App 522; 202 NW2d 334 (1972), *lv den* 388 Mich 803 (1972); *People v Green,* 34 Mich App 149; 190 NW2d 686 (1971), *lv den* 386 Mich 769 (1971), and because any unduly

---

[4] In passing upon the propriety of a prosecutor's closing argument, this Court observed in *Allen:*

"We concede that there is little room for argument that his remarks were intemperate and perhaps better left unsaid. But under all the circumstances we cannot say that they were fatally prejudicial or entirely without provocation. Criminal trials are not basket luncheons, and we seem faintly to recall that in our experience opposing lawyers rarely if ever pelted each other with rose petals. In any case, counsel for defendants cannot on his side be allowed great latitude to goad and provoke adverse comment or criticism from the prosecutor and then seek a reversal because his strategy succeeded. When opposing counsel makes accusations and creates inferences of unfairness and unprofessional conduct against the prosecution, he is scarcely in a position to ask a reversal because of equally intemperate language used in reply. To permit that would be to award victory to those criminal defendants retaining the best 'needler'. Under the circumstances presented here we must hold that this ground of error is without merit. (See, generally, 2 Gillespie, Michigan Criminal Law and Procedure [2d ed], § 626.)" 351 Mich at 544.

prejudicial effect could have been eliminated by a curative instruction if one had been requested upon a timely objection. *People v Hall,* 396 Mich 650; 242 NW2d 377 (1976); *People v Omacht,* 326 Mich 505; 40 NW2d 704 (1950); *People v Goldberg, supra; People v Mulvaney,* 171 Mich 272; 137 NW 155 (1912).

It is, of course, as much the duty of a public prosecutor to ensure that the criminally accused receive a fair trial as it is to use his best efforts to convict those guilty of crimes.[5] However, it is also true that a well-tried, vigorously argued case ought not to be overturned due to isolated improper remarks which could have been cured had an objection been lodged. *People v Hall, supra.* Whether the defense strategy was to forego objection and hope that the objectionable portions of the prosecutor's argument would engender sympathy in the jury, or to invite error as a foundation for subsequent reversal, we will not now review assignments of error so waived. *Cf. Henry v Mississippi,* 379 US 443; 85 S Ct 564; 13 L Ed 2d 408 (1965).

We pause to observe that the prosecutor discussed the evils of heroin trafficking in his final argument.[6] The evidence relating to heroin and a

---

[5] In *People v Dane,* 59 Mich 550, 552; 26 NW 781 (1886), we observed:

"It is the duty of the public prosecutor to see that the person charged with crime receives a fair trial, so far as it is in his power to afford him one, and it is likewise his duty to use his best endeavor to convict persons guilty of crime; and in the discharge of this duty an active zeal is commendable, yet his methods to procure conviction must be such as accord with the fair and impartial administration of justice; and it is improper for one occupying the position of the prosecuting officer to make a statement to the jury of a fact, as of his own knowledge, which has not been introduced in evidence under the sanction of an oath, relating to the material issues in the case * * * ."

[6] In his closing argument in this case, the prosecutor informed the jury:

"One of the things Mr. Blake told you he resented was the fact that

narcotics protection racket was admitted under the similar acts statute for a very limited purpose. The discussion of the narcotics evidence in final argument was intemperate and ill-advised even though the prosecutor himself, at another point in his argument, informed the jury of the limited uses of the evidence.[7] In this instance as well, however, defense counsel failed to object and request a curative instruction. We agree with the Court of Appeals that the prejudicial propensity of this brief but improper reference to narcotics could have been cured by a prompt objection and curative instruction. We therefore decline to reverse on this point, although the reference to the similar acts evidence in the final argument is expressly disapproved.

Affirmed.

I offered evidence showing that in spite of the efforts, in spite of the alleged efforts of these two defendants, there really wasn't very much effective police work concerning narcotics resulting from their alleged efforts. Did and do the names Duncan and McIntosh strike terror into the hearts of the dope dealers in Inkster? I don't think so and I don't think you think so either.

"First, let me say this, we have been talking rather casually. I think too casually about dope and about dope dealers. When we have mentioned dope at this trial we are talking about narcotics, about heroin. Heroin is that substance which is corrupting our society. Heroin is that substance which is destroying our children. I think it is important for you to appreciate the significance of what we have been talking about at this trial.

"Now, the testimony that has been presented to you shows that both these men spent a lot of time with Betty Harris, one of them said 10 or 15 buys, the other couldn't remember. Their testimony shows that at different points in time both of them engaged in this activity voluntarily, that is to say that it was not their assigned duty, sort of a private war on crime as they tell it. But for all these efforts that they told you about for all this public spirited voluntary action, no convictions or at most one maybe five years ago."

[7] Previously in his argument, the prosecutor had said:

"In this particular trial we have presented to you proof of other similar acts. That in fact these two defendants engaged in an ongoing conspiracy and a series of other criminal solicitations. These proofs were offered and may be used by you only for a limited purpose. Judge Rashid has already once instructed you as to that limited purpose, I trust he will do it again in his final instruction."

COLEMAN and FITZGERALD, JJ., concurred with
RYAN, J.

WILLIAMS, J. *(concurring in the result of* JUSTICE
RYAN's *opinion).* My Brothers RYAN and LEVIN
would in their separate and disagreeing opinions
decide this case on one disjunctive part of the
pertinent statute. I would decide the case on the
other disjunctive part, otherwise utilizing Justice
RYAN's analysis.

They rely on the following language of MCLA
768.27; MSA 28.1050:

"In any criminal case where *the defendant's motive,
intent, the absence of, mistake or accident on his part,
or* * * * is material, any like acts, or other acts of the
defendant which may tend to show *his motive, intent,
the absence of, mistake or accident on his part,* or * * *
may be proved * * * " (emphasis added).

However, supplying the language omitted above
and omitting the language above italicized, the act
equally says:

"In any criminal case where * * * the defendant's
scheme, plan or system in doing an act, is material, any
like acts, or other acts of the defendant which may tend
to show * * * the defendant's scheme, plan or system in
doing the act, in question, may be proved * * * ."

In this case the prosecution testimony in ques-
tion showed "defendant's scheme, plan or system"
and was admissible. *People v Kelly,* 386 Mich 330,
333–335; 192 NW2d 494 (1971).

LEVIN, J. *(for reversal).* Albert Duncan and Leon
McIntosh, police officers, were convicted of solicit-

ing a bribe[1] and of a related conspiracy offense[2] on evidence that they had offered to return to a suspected fence, upon his payment of money to them, property confiscated from him in a criminal investigation.

I would reverse and remand for a new trial because similar acts evidence should not have been admitted to characterize Duncan's and McIntosh's intent in the alleged bribe solicitation and, as a result of the admission of such evidence, they were denied a fair trial.

Betty Harris testified that she had acted for Duncan and McIntosh in transmitting the bribe offer to Irving Broadnax, the suspected fence.[3] Broadnax[4] corroborated her testimony that she had sought money from him, ostensibly at Duncan's and McIntosh's request, and said that Duncan, in a telephone conversation, made such an offer.

It is not claimed that any money was paid or that any property was returned.

Duncan and McIntosh denied that they had authorized Harris to make or had themselves made such an offer.

The disputed factual issue was whether Duncan and McIntosh had offered to return the confiscated property in exchange for the payment of money.

Harris was permitted, over objection, to testify

---

[1] MCLA 750.505; MSA 28.773.

[2] MCLA 750.157a; MSA 28.354(1).

[3] When first questioned by the police Harris said that Broadnax had asked her to transmit a bribe offer to Duncan and McIntosh. She had worked for them as a paid informant and was admittedly angry that they had not protected her from a jail sentence. Suffering from heroin withdrawal, she changed her story and offered to testify against them. She was then transferred from the jail to a hospital, was subsequently permitted to go home without serving the jail sentence, and was being maintained on methadone at the time of trial.

[4] He was on probation for another offense.

that she had a year or two earlier solicited and
received money from drug dealers for protection
against arrest and prosecution which she paid to
Duncan and McIntosh. This testimony was nomi-
nally offered to show that, in soliciting a bribe
from Broadnax, Duncan and McIntosh acted with
felonious intent.

The trial judge ruled that the solicitation and
receipt of protection money from drug dealers
were acts similar to the solicitation of money from
a suspected fence for the wrongful return of prop-
erty,[5] and that Harris' testimony was admissible
under the "similar acts" statute[6] to characterize
Duncan's and McIntosh's intent in soliciting a
bribe.

My colleague agrees, on narrower grounds, that
the similar acts evidence was admissible: "By
pleading not guilty and disputing intent by their
proofs at trial, defendants placed their intent in
issue."

A plea of not guilty does not in itself justify the
admission of similar acts evidence on the issue of
intent. If it did, similar acts evidence would always
be admissible because criminal intent, *mens rea,* is
an essential element in all felony prosecutions.

Similar acts are admissible to prove ·criminal

[5] The view here expressed that the evidence of other acts was
inadmissible makes it unnecessary to consider whether such acts were
relevant, similar and proved in the manner required by the statute.

[6] "In any criminal case where the defendant's motive, intent, the
absence of mistake or accident on his part, or the defendant's scheme,
plan or system in doing an act, is material, any like acts, or other acts
of the defendant which may tend to show his motive, intent, the
absence of mistake or accident on his part, or the defendant's scheme,
plan or system in doing the act, in question, may be proved, whether
they are contemporaneous with or prior or subsequent thereto; not-
withstanding that such proof may show or tend to show the commis-
sion of another or prior or subsequent crime by the defendant."
MCLA 768.27; MSA 28.1050.

*See* Proposed MRE 404(b). 399 Mich 951, 972 (1977).

intent only where the defendant's intent cannot readily be inferred from the evidence probative of the other elements of the offense or where the defendant concedes the act was committed but claims it was committed without felonious intent.

The intent of one who solicits a bribe is not equivocal; felonious intent is readily inferred from the act of solicitation. There is no need, as part of the people's case-in-chief, to characterize such an act with evidence of other unlawful solicitations to clarify the solicitor's intent.

Duncan and McIntosh did not "dispute" "by their proofs" or otherwise the intent of the asserted solicitation; rather, they denied that they solicited Broadnax. The disputed issue was not the intent with which the act was committed but whether it was committed.

Duncan and McIntosh did not concede the act of solicitation and assert as a defense that their purpose was to entice or detect wrongdoing and their intent was therefore innocent.

The trial judge did not indicate any awareness that he could, in the exercise of discretion, exclude the similar acts evidence if he concluded that its unfair prejudicial impact outweighed its probative value. He did not exercise his discretion to exclude the evidence.

As a result of the admission of the similar acts evidence, the primary evidentiary focus became whether Duncan and McIntosh had accepted protection money from dope dealers. The charged offense, solicitation of a bribe from Broadnax, was submerged in a plethora of charges and unsubstantiated innuendo regarding the uncharged "ongoing" conspiracy to accept protection money from dope dealers and an array of charges that Duncan and McIntosh had received bribes from a number

of dope dealers years before on dates and occasions that Harris—who supplied the *only* evidence tending to show that any such bribe had been solicited or paid—could only vaguely or not at all recall. In this connection, Duncan and McIntosh were cross-examined extensively concerning their life styles, personal expenditures and general performance as police officers.

Duncan and McIntosh did not receive a fair trial.

I

It is long-established judicial policy that evidence tending to show that the accused committed an offense not charged in the information is not admissible for the purpose of showing his criminal disposition, or a character trait or propensity to commit that offense to support an inference that he committed the charged offense.[7]

The United States Supreme Court, conceding that character is relevant and the "admitted probative value" of character evidence, has said that the "inquiry" is rejected because "it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge". *Michelson v United States,* 335 US 469, 475–476; 69 S Ct 213; 93 L Ed 168 (1948).

The United States Court of Appeals for the Tenth Circuit has said that "it is clear that the problem is not a simple evidentiary one, but rather goes to the fundamental fairness and justice of the trial itself". "[T]he rule is primarily a

---

[7] *See* McCormick on Evidence (2d ed), § 190, p 447. *See, also,* FR Ev 403, 404.

rule of exclusion" and "although there are many exceptions, these do not detract from the general exclusionary approach which the rule demands". The court identified several factors as contributing "to formulation of a cautious judicial attitude":

"First, the accused is required to defend charges which are not described in the information or indictment. * * *

"Secondly, although such evidence may have at least some relevance to the offense being tried, its predominant quality is to show up the defendant's character * * * . Showing that a man is generally bad has never been under our system allowable. The defendant has a right to be tried on the truth of the specific charge contained in the indictment.

"Third, an obvious truth is that once prior convictions are introduced the trial is, for all practical purposes, completed and the guilty outcome follows as a mere formality. This is true regardless of the care and caution employed by the court in instructing the jury." *United States v Burkhart,* 458 F2d 201, 204–205 (CA 10, 1972).

The Michigan cases are fully in accord: "The general rule is well settled that the prosecution are not allowed to prove the commission of another and distinct offense, though of the same kind with that charged, for the purpose of rendering it more probable in the minds of the jury that he committed the offense for which he is on trial." *People v Schweitzer,* 23 Mich 301, 304–305 (1871). *People v Lapidus,* 167 Mich 53, 57; 132 NW 470 (1911).[8]

---

[8] *Similarly, see People v Pinkerton,* 79 Mich 110, 113; 44 NW 180 (1889); *People v Minney,* 155 Mich 534, 537–538; 119 NW 918 (1909); *People v Seaman,* 107 Mich 348, 357; 65 NW 203 (1895); and *Lightfoot v People,* 16 Mich 507, 510–511 (1868).

## II

Similar acts evidence is, however, admissible for other purposes,[9] including as proof of intent.[10]

Such evidence is admissible on issues in doubt or in dispute. "To be admissible, the evidence must be necessary to the issue of intent. Where intent is admitted, the evidence may not be received, and the same thing is true where the nature of the offense on trial is such that proof of its commission carries with it an implication or presumption of criminal intent." 1 Underhill's Criminal Evidence (6th ed, Herrick), § 208, p 623.[11]

Similar acts evidence is admissible to prove intent where the evidence probative of the charged offense is ambiguous or equivocal on the element of intent, *People v Lonsdale,* 122 Mich 388, 392; 81 NW 277 (1899); *People v Petropoulapos,* 217 Mich 198, 203; 185 NW 730 (1921); *People v Minney,* 155 Mich 534, 538–539; 119 NW 918 (1909), or where defendant disputes his intent by admitting the act and denying wrongful intent, *People v Seaman,* 107 Mich 348, 358–359; 65 NW 203 (1895).[12]

[9] *See, e.g., People v Kelly,* 386 Mich 330, 335; 192 NW2d 494 (1971), where the similar acts evidence was part of a chain of circumstantial evidence tending to identify the defendant as the culprit.

[10] *See* fn 6, *supra.*

[11] "Where the requisite intent is presumed or inferred from proof of the criminal act itself, or where the intent of the defendant is not in issue, evidence of other crimes is not admissible." 1 Wharton's Criminal Evidence (13th ed), § 245, p 560.

[12] The governing principle is illustrated in McCormick, *supra,* § 190, p 450, fn 42. The authors discuss cases holding similar acts evidence was admissible to show intent where it was claimed that the defendant was an unwitting tool of his employer, or that he picked a purse from the floor thinking it lost or that shots were not fired purposefully. The authors cite Michigan authority: "However, when the act charged is not equivocal, but the criminal intent is a necessary conclusion from the act, this theory of other acts as showing intent may not be availed of. *People v Lonsdale,* 122 Mich 388; 81 NW 277 (1899)."

Wigmore explains with an example the principle permitting evidence of similar acts to be admitted to characterize equivocal evidence to prove intent:

This Court has declared that "[w]here the intent or guilty knowledge is a necessary conclusion from the act done, proof of other offenses of a similar character is inadmissible, and violates the rule that the evidence must be confined to the issue", *People v Lonsdale, supra,* p 392,[13] and that such evidence is not admissible where there is no *need* for additional evidence on the issue of intent:

"In the present case the commission of another like offense was wholly *unnecessary* to show intent. The act itself is one of those which, when proven, conclusively establishes the malicious intent, if committed by a sane person. Any number of like offenses would not tend to

---

"[I]f A while hunting with B hears the bullet from B's gun whistling past his head, he is willing to accept B's bad aim or B's accidental tripping as a conceivable explanation; but if shortly afterwards the same thing happens again, and if on the third occasion A receives B's bullet in his body, the immediate inference (*i.e.* as a probability, perhaps not a certainty) is that B shot at A deliberately; because the chances of an inadvertent shooting on three successive similar occasions are extremely small; or (to put it another way) because inadvertence or accident is only an abnormal or occasional explanation for the discharge of a gun at a given object, and therefore the recurrence of a similar result (*i.e.* discharge towards the same object, A) excludes the fair possibility of such an abnormal cause and points out the cause as probably a more natural and usual one, *i.e.* a deliberate discharge at A." 2 Wigmore, Evidence (3d ed), § 302, p 196.

The United States Court of Appeals for the Fifth Circuit has said:

"Such exception, for instance, permits the introduction of testimony showing that a person being tried for knowingly passing counterfeit money has, on prior occasions, passed bills shown to be counterfeit, even though the instant prosecution does not involve the passing of the earlier bills. So, too, where an accused's conduct for which he is on trial is ambiguous in nature, that is where wrongful if done with an improper intent but not criminal if done innocently, testimony of prior conduct by the accused may be shown to assist the jury in resolving the issue of intent." *Bullard v United States,* 395 F2d 658, 660 (CA 5, 1968).

[13] Lonsdale had been convicted of manslaughter by abortion. Evidence that another woman had applied to Lonsdale for an abortion was held inadmissible and her conviction was reversed. "Upon the record, there is no room for an inference that death resulted from accident, or that the operation was performed to save the life or health of the deceased. On the contrary, if the jury found that the dying declaration of the deceased was true, the crime was complete, and the jury could not find otherwise than that it was done with guilty knowledge and intent." *People v Lonsdale,* 122 Mich 388, 392; 81 NW 277 (1899).

show malicious intent any more than could one." *People v Minney, supra,* pp 538–539 (emphasis supplied).[14]

The United States Court of Appeals for the Fifth Circuit has similarly declared that the court "must balance the *actual need* for that evidence in view of the *contested issues* and the other evidence available to the prosecution, and the strength of the evidence in proving the issue, against the danger that the jury will be inflamed by the evidence to decide that because the accused was the perpetrator of the other crimes, he probably committed the crime for which he is on trial as well". *United States v Goodwin,* 492 F2d 1141, 1150 (CA 5, 1974) (emphasis supplied).

Such evidence is not admissible to prove intent where—as in the instant case—the prosecution depends on the credibility of a witness whose "story, if believed, leads ineluctably to the conclusion that the defendants knew what they were doing" (*United States v DeCicco,* 435 F2d 478, 484 [CA 2, 1970]), or where "if the act were proven, intent would naturally be inferred. * * * [I]ntent is not in issue when evidence of intent is inferable if the proscribed act is proven and defendant does not claim mistake or inadvertence". *United States v Ring,* 513 F2d 1001, 1008–1009 (CA 6, 1975).

Nor can the admission of similar acts evidence be justified simply because the defendant pled not guilty and, perforce, the prosecution has the obligation of proving all the elements of the offense including criminal intent. *People v Seaman, supra,* pp 358–359.[15] If similar acts evidence were on that

---

[14] The defendant's conviction for mutilating a horse by cutting out its tongue was reversed because evidence of similar acts had been admitted.

[15] This Court's recognition that similar acts evidence is not admissible merely because it bears on an element of the offense and that it must also appear that the defendant claims he acted innocently or that there is room for such an inference, appears in the following statement:

account admissible the exception—criminal intent being an essential element in all felony prosecutions—would become the rule; there would be no need for additional exceptions (fn 6) to prove motive, absence of mistake or accident or the defendant's scheme, plan or system in doing an act. "[I]t is necessary that willfulness and intent be *more than merely formal issues* in the sense that the defendant is entitled to an instruction thereon. * * * When, as in this case, the government has ample evidence to take the case to the trier of fact for its deliberation, a plea of not guilty cannot, by itself, be construed as raising such a keen dispute on the issue of willfulness and intent so as to justify admission of this type of evidence." *United States v Fierson,* 419 F2d 1020, 1023 (CA 7, 1969).

The Supreme Court of California has similarly observed that "[i]t is not and should not be the law, however, that defendant's not guilty plea places his intent in issue so that proof of [similar acts] is *always* admissible. Such evidence is admissible in cases where the proof of defendant's intent is ambiguous, as when he admits the acts and denies the necessary intent because of mistake or accident." *People v Kelley,* 66 Cal 2d 232, 242–243; 57 Cal Rptr 363; 424 P2d 947, 956 (1967) (emphasis in original). Other state authority is in accord.[16]

---

"Upon principle and authority, it is clear that where a felonious intent is an essential ingredient of the crime charged, *and* the act done is claimed to have been *innocently* or accidentally done, or by mistake, or when the result is claimed to have followed an act lawfully done for a legitimate purpose, or where there is *room for such an inference,* it is proper to characterize the act by proof of other like acts producing the same result, as tending to show guilty knowledge, and the intent or purpose with which the particular act was done, and to rebut the presumption that might otherwise obtain." *People v Seaman,* 107 Mich 348, 358–359; 65 NW 203 (1895) (emphasis supplied).

[16] The New York Court of Appeals has said:

"As these principles have been applied in our decisions to evidence sought to be introduced to prove a defendant's *intention* [emphasis by

### III

No act speaks absolutely regarding the intent of the actor. A person charged with a sexual offense may have thought that he was with his spouse[17] or that there was consent.[18] A person who cuts another with a knife or who performs an abortion may be seeking to save the victim's life. A police officer who offers to accept a bribe may be enticing or detecting. Nevertheless, the sexual act, the acts of cutting with a knife, performing an abortion and soliciting a bribe speak so unequivocally regarding the actor's intent that, absent a claim that the intent was innocent, evidence of similar acts is not admissible to characterize intent.

While *payment or acceptance of money* may be ambiguous or equivocal, and a bribe solicitation might be couched in ambiguous language, the act of *soliciting a bribe* in unambiguous language is not equivocal. There is no suggestion that any money was paid by Broadnax to Duncan and McIntosh or that there was any ambiguity in the

---

the court] in the crime charged, the probative 'balance' has generally warranted admission of this evidence only where the acts involved in the crimes charged are equivocal so that intention is not easily inferred from the acts alone." *People v McKinney,* 24 NY2d 180, 184; 299 NYS2d 401; 247 NE2d 244 (1969) (citations omitted).

The Nevada Supreme Court has said:

"[W]hen the other offense sought to be introduced falls within an exception to the rule of exclusion, the trial court should be convinced that the probative value of such evidence outweighs its prejudicial effect. [Citations omitted.] *The reception of such evidence is justified by necessity* and, if other evidence has substantially established the element of the crime involved (motive, intent, identity, absence of mistake, etc.), the probative value of showing another offense is diminished, and the trial court should rule it inadmissible even though relevant and within an exception to the rule of exclusion." *Tucker v State,* 82 Nev 127, 130; 412 P2d 970, 971–972 (1966) (emphasis supplied).

[17] *See* Williams, Criminal Law, The General Part (2d ed), § 35, p 93.

[18] *Director of Public Prosecutions v Morgan,* [1976] AC 182; 2 All E R 347.

language used to transmit the bribe solicitation to
Broadnax which might have justified the admis-
sion of extrinsic evidence to clarify Harris' or
Duncan's and McIntosh's meaning and, indeed, the
similar acts evidence was not offered or received
for that purpose.

Reliance on *People v Johnston,* 328 Mich 213,
231; 43 NW2d 334 (1950), is therefore misplaced.
Johnston was charged with *accepting* a bribe.
Because the requisite intent could not readily be
inferred from the mere payment of money, evi-
dence of other payments that were part of a
continuing system or plan was held admissible.[19]

*Johnston* follows an earlier Michigan case hold-
ing that the payment of money is inherently ambi-
guous or equivocal and, therefore, where its re-
ceipt is the gravamen of the offense, evidence of
similar acts is admissible.[20]

---

[19] "The offense charged against defendant in the instant case in-
volves a specific intent. As defined by the statute, however, *it is not of
such nature that the intent,* which the jury must find established by
the evidence beyond a reasonable doubt in order to convict, *may be
inferred from the mere fact that on a certain occasion payment of
money was made to the accused and accepted by him.* In a case of this
character it may not be possible to interpret and properly character-
ize the specific act involved except by reference to a definite and
continued course of conduct, plan or system, of which it is a part. As
said in *People v Vinokurow* [322 Mich 26; 33 NW2d 647 (1948)], 'The
law should not be so construed as to make defendants in such cases
conviction proof.'

"The admissibility of testimony fairly tending to establish a contin-
uing system or plan has been repeatedly recognized not only in this
State, but in other States as well. The rule in this regard may well be
said to be established by the overwhelming weight of authority.
Decisions relating to the trial of offenses not involving a corrupt
intent and *cases in which intent, if an essential element, is required
to be found from the facts and circumstances of the particular act or
transaction involved, are, for obvious reasons, not in point." People v
Johnston,* 328 Mich 213, 231; 43 NW2d 334 (1950) (emphasis supplied).

[20] "The cases cited are readily distinguishable from the one at bar.
It will be observed that in most of those cases the intent followed as a
necessary conclusion from the acts constituting the crime charged. In
the case at bar the criminal intent did not follow from the mere
receiving of the money, and the case is, therefore, an exception to the

In the instant case no money was paid, nor is payment of money an element of the offenses of soliciting a bribe or conspiring to solicit a bribe.

## IV

The "relative credibility" of Duncan and McIntosh and of Harris and Broadnax "was the issue". See *Crinnian v United States,* 1 F2d 643, 645 (CA 6, 1924); *United States v DeCicco, supra.* There could be no concern that if the jury believed the testimony that Duncan and McIntosh solicited a bribe it might nevertheless acquit them because it entertained a reasonable doubt regarding the intent with which the solicitation was made.

In *Crinnian,* the United States Court of Appeals for the Sixth Circuit reversed a conviction of a prohibition agent for soliciting and accepting a bribe on the ground that evidence he had previously engaged in or promoted transactions involving violations of the prohibition act should not have been admitted. The court declared that "former conduct" involving a violation of the prohibition act might be relevant on the element of intent "where an established fact permitted ambiguity as to intent, as where the taking of money by a prohibition agent *might be enticing or might be detecting.* There is no such issue here. Either Crinnian asked for and took the money, and is guilty, or he did neither, and is innocent. The *relative credibility* of Crinnian and Stinson *was the issue.* Proof that Crinnian had formerly violated the Prohibition Act could have no bearing on the issue, except by showing that he had the

general rule." *People v Petropoulapos,* 217 Mich 198, 203; 185 NW 730 (1921).

'criminal mind,' and this is the very inference that the common law calls irrelevant." *Crinnian v United States, supra,* p 645 (emphasis supplied).[21]

The act of solicitation being unequivocal, there was no need to admit evidence of similar acts to characterize the intent with which the act was committed; the evidence "was wholly unnecessary to show intent". *People v Minney, supra,* p 538.

## V

My colleague's conclusion that "the evidence of the four principal witnesses showed the discussions and apparent *agreement* to return the property for $800" (emphasis supplied) is contradicted by the record:

—Harris testified that Duncan and McIntosh offered to return the property to Broadnax for $1000, that she transmitted counter-offers from Broadnax for lesser amounts and that *no* agreement was reached because Duncan and McIntosh sought more than Broadnax would pay.

—Broadnax testified that he had such conversations with Harris and a telephone conversation with Duncan regarding the payment of $800 but that *no* agreement was reached.

—Duncan and McIntosh testified that Harris told them that Broadnax would be willing to pay $1000 for the return of the property, that because they had found her to be irresponsible (see fn 3) they did not take her seriously, that McIntosh

---

[21] *Similarly, see Farkas v United States,* 2 F2d 644, 647 (CA 6, 1924):

"But in this case intent was not in issue. If the money demand was made under threat of informing or in consideration of not informing, no further specific intent is required. Therefor the entire evidence of similar offenses and, of course, of different offenses, should have been excluded."

*See, also, Haynes v Commonwealth,* 104 Va 854; 52 SE 358 (1905).

subsequently reported the conversation to his superior, Lt. Reid,[22] who suggested that they meet with Broadnax to see *if* he would make a bribe offer; when they did meet with him he did *not* make an offer. It was Duncan's and McIntosh's testimony, in sum, that they had no conversation at any time with Broadnax regarding payment of a bribe.

Not only does the record establish that there was no "agreement" for the return of the property, Duncan and McIntosh were not charged in the information with entering into an agreement to accept a bribe nor did the people seek to prove such an agreement.

Duncan and McIntosh did not place their intent in issue by simply admitting that they had conversations with Harris and Broadnax and that the conversations with Harris concerned payment of a bribe. The conflict in the testimony over whether Duncan and McIntosh solicited a bribe or Harris approached them does not indicate that the intent of the alleged solicitation was equivocal or that Duncan and McIntosh disputed their intent; it shows only that there is uncertainty and dispute regarding the time, place and substance of the conversations.

Evidence of Duncan's and McIntosh's asserted propensity to commit a particular "sort" of offense[23] was not admissible for the purpose of resolving the issues of credibility underlying the uncertainty and dispute regarding the conversations—such evidence was not admissible to make it appear more likely that Duncan and McIntosh initiated bribe conversations.[24]

---

[22] The people contended that the report was belated and not in the manner required by departmental policy.

[23] *United States v Goodwin,* 492 F2d 1141, 1153 (CA 5, 1974).

[24] *See* parts I and IV, *supra.*

Just as similar acts evidence is not admissible to show intent unless intent is in dispute, neither is it admissible to show "defendant's scheme, plan or system in doing the act" unless such evidence tends to prove a disputed element of the offense or negative a defense:[25]

"Motive, intent, absence of mistake, plan, and identity are not really all on the same plane. Intent, absence of mistake, and identity are facts in issue—*facta probanda.* Motive, plan, or scheme are *facta probantia,* and may tend to show any *facta probanda.*"[26]

Scheme, plan or system may not be shown *in vacuo* without regard to the materiality and probative value of such evidence on a disputed element of the offense or of a defense, and is not material or probative on the issue of credibility.[27]

My colleague's conclusion that Duncan and McIntosh asserted an enticement defense is also contradicted by the record:

—While their counsel did, in his opening statement, say that the testimony of both the people's and the defendants' witnesses would "show * * * that there was talk of a bribe", Duncan and Mc-

---

[25] McCormick, *supra,* § 190, pp 447–454.

[26] Stone, *The Rule of Exclusion of Similar Fact Evidence: America,* 51 Harv L Rev 988, 1026, fn 190 (1938).

The separate opinion of another colleague based on the "scheme, plan or system" clause of the statute *(see* fn 4, *supra)* does not indicate the materiality or probative value of such evidence in the instant case, and ignores both the common-law history of the statute and this Court's ultimate responsibility for the rules of evidence. *Perin v Peuler (On Rehearing),* 373 Mich 531, 541; 130 NW2d 4 (1964).

The opinion also assumes without discussion that the act of soliciting a bribe for the return of confiscated property and acts, more than a year earlier, of accepting bribes to protect drug dealers show a common scheme, plan or system.

[27] *See Crinnian v United States,* 1 F2d 643, 645 (CA 6, 1924); *United States v DeCicco,* 435 F2d 478, 484 (CA 2, 1970); *United States v Burkhart,* 458 F2d 201, 204–205 (CA 10, 1972).

Intosh did not contend that they had any conversation with Broadnax tending to support an enticement defense. They did not intimate, let alone claim, that they "went along with [the scheme] so as to catch Mr. Broadnax in a crime".

—On direct examination neither Duncan nor McIntosh asserted that they had met with Broadnax to discuss payment of a bribe or entice him into making a bribe offer. On direct McIntosh said only that Lt. Reid asked him to meet with Broadnax to see if he would make an offer; he did not claim that he had followed through on Reid's request or met with Broadnax for that purpose. It was the prosecutor who brought out on cross-examination that Duncan and McIntosh had met with Broadnax and that Broadnax did not make an offer. On direct Duncan did not advert to the matter at all and, likewise, on cross-examination testified that Broadnax made no offer when they met. Thus, neither on direct nor cross-examination did they claim that they made any suggestion or offer, enticing or otherwise, to Broadnax.

My colleague's statement "*[b]efore* any proofs were offered, defense counsel's opening statement informed the jury that 'our testimony will show along with the prosecution's testimony that there was talk of a bribe' " (emphasis supplied) suggests that the opening statement "opened the door" to the similar acts evidence. In neither his opening statement nor his closing argument, however, did defense counsel intimate in the slightest an enticement defense.

The record shows that "our testimony" related to conversations with Harris in which she indicated Broadnax' willingness to pay a bribe rather than enticing offers from Duncan and McIntosh. It also shows that the prosecutor offered similar acts

evidence at the preliminary examination. It further shows that during his opening statement and in argument and colloquy with the court "before" defense counsel's opening statement the prosecutor said he would offer similar acts evidence at the trial. The similar acts evidence came in through the testimony of Harris as part of the people's case-in-chief and was not offered in response to an enticement defense or any other defense.

The prosecutor did not, at the trial, contend that similar acts evidence was being offered to respond to an "anticipated" enticement defense. The United States Court of Appeals for the Second Circuit has said that it was "not impressed" by the prosecution's belated attempt to justify the admission of similar acts evidence on the ground "of obviating in advance" a defense under the circumstance that the evidence "was introduced during the Government's direct case before any" defense "was delineated". *United States v DeCicco, supra,* p 484. Similarly, see *United States v Miller,* 500 F2d 751, 763 (CA 5, 1974). The prosecutor made no closing argument in response to this "defense". This is an afterthought, an "appellate parachute"[28] *noticed for the first time on appeal.*

## VI

It is common ground that similar acts evidence should be excluded where its probative value is outweighed by its unfair prejudicial effect.[29] The hazards of admitting such evidence are acknowledged in my colleague's opinion.

The United States Court of Appeals for the Fifth Circuit pertinently observed:

[28] *People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969).
[29] *See People v DerMartzex,* 390 Mich 410, 415; 213 NW2d 97 (1973).

"All that we demand of trial courts and litigants in this seemingly complex area of criminal jurisprudence is that they deal in reason, not categories. The treasured principles underlying the rule against admitting evidence of other crimes should be relaxed only when such evidence is genuinely needed and would be genuinely relevant." *United States v Miller, supra,* p 763.

Where intent can readily be inferred from the evidence offered to prove the other elements of the offense, and such evidence is unequivocal on the element. of intent, and the defendant does not assert an innocent intent, the probative value of similar acts evidence on the element of intent is necessarily outweighed by the inflammatory nature of such evidence.

The record does not support my colleague's conclusion, in finding "no abuse of discretion by the trial judge", that he "carefully considered the matter" "of whether the probative value of similar acts testimony is substantially outweighed by its unfairly prejudicial effect".

The judge declared his view that "these are similar acts", that was "clear" and "unequivocal", and that the similar acts go to the "question of whether or not there was scheme or plan. To me, there is no question about it, not one iota."

In argument and colloquy following the prosecutor's opening statement and his subsequent proffer of the similar acts evidence there was no recognition on the judge's part that there were two sides to the question of admissibility of the proffered evidence, let alone that, even if the other acts were "similar" and the evidence was probative of an issue in the case, he could exclude such evidence in the exercise of discretion if its unfair prejudicial effect outweighed its probative value.

The judge did not "consider" this aspect of the matter "carefully" or otherwise. He did not exercise his discretion.[30]

### VII

My colleague further states that after so "carefully consider[ing] the matter" and properly exercising his discretion the judge "carefully controlled the proceedings and specifically instructed the jury on the permissible uses of the testimony". The judge did so specifically instruct the jury, but it is extravagant to conclude that the judge controlled the scope of the proofs resulting from the admission of the similar acts evidence.

Building on the postulate of Harris' assertions that she had transmitted bribes from dope dealers to Duncan and McIntosh, one to two years before the asserted solicitation of a bribe from Broadnax —and although it was not claimed that any money had been paid to Duncan and McIntosh *by Broadnax*—Duncan and McIntosh were cross-examined at great length regarding their life styles and standards of living. Duncan's expenses during and after marriage, including his expenditures for groceries and household expenses, the number of suits he owned, his gambling activities and his vacations were explored:

"How much do you pay in support of [your children]? * * * Do you regularly make those [support] payments? * * *

"Do you have a car? * * * What kind? * * * When

---

[30] *See People v Merritt*, 396 Mich 67, 80; 238 NW2d 31 (1976); *People v Cherry*, 393 Mich 261; 224 NW2d 286 (1974); *People v Jackson*, 391 Mich 323, 332; 217 NW2d 22 (1974); *Quigley v Dexter Twp*, 390 Mich 707, 709; 213 NW2d 166 (1973); *People ex rel Department of Public Works v Union Machine Co*, 133 Cal App 2d 167, 171; 284 P2d 72, 74 (1955).

did you get that car? * * * Did you buy it new? * * *
What did you pay for it? * * * Are you making pay-
ments on it? * * * How much per month did you spend
on car payments? * * * How much per month did you
pay for insurance on the car? * * *

"That's a nice suit you've got on. * * * How much did
it cost you? * * * How many suits do you have? * * *
Where did you buy the suit? * * * You buy your suits
for cash? * * *

"Did you take a vacation during the last year? * * *
Where did you go? * * *

"When you were living with your wife and children
how much did you spend on food per week? * * * What
were your monthly house payments? * * *

"When was the last time you worked? * * * How do
you support yourself? * * * I think we are all aware of
what your ordinary expenses might be. My question is,
how do you meet those expenses? * * * Do you have a
bank account? * * * What was your take-home pay
when you were working as an Inkster Police Officer?
* * *

"Do you ever go to the race track? * * * About how
frequently do you go to the race track? * * * And do
you bet when you are at the race track? * * * Can you
give us an estimate of your average bettings during the
week? * * * Do you engage or have you engaged in any
other gambling activities? * * * What sort of [poker]
stakes?"

McIntosh's personal expenditures were similarly
explored:

"Is your daughter a dope addict? * * * How much do
you contribute to the support of your daughter? * * *
Can you tell us how much you spent on other things
that she needed in the past year? * * *

"Do you give your paycheck to your wife? * * * Do
you handle your own finances? * * * How much money
from your paycheck do you give to your wife? * * * Can
you tell us how much you have contributed to your wife
and the two children over the past year? * * *

"What kind of car do you drive? * * * Are you

paying for that car, or is it paid for? * * * How much do you pay per month? * * * How much rent do you pay for your house in Inkster? * * * How many suits do you have? * * * Where did you purchase them? * * *

"Did you take a vacation last year? * * * Where did you go? * * * How long did you stay? * * * How much did the vacation cost you? * * *

"Have you made a large deposit to a credit union this year? * * * Did you make a large deposit to the credit union last year? * * * How much was that deposit? * * * Where did you get the money? * * *

"How often do you go to the racetrack? * * * How much money did you win at the racetrack last year?"

Duncan and McIntosh were also extensively questioned regarding their efforts to apprehend and prosecute dope dealers—how many arrests were made, whether they had ever arrested any of the persons mentioned by Harris and whether they had sought to have Harris make buys from persons known to them to be dope dealers and whether and to what extent they had assisted other governmental agencies investigating narcotics traffic in Inkster:

"Did you ever arrest Willie Currie? * * * You know him to be a dope pusher though? * * * How many buys did Betty Harris make for you? * * * In how many of those cases did you get warrants? * * * In how many of those cases did you get convictions? * * * Tell me how many subsequent possession warrants you got? * * * How many convictions did you get over the past three years? * * * Who? * * * When was the last time you got a possession conviction? * * * Did you ever get a warrant against Willie Currie? * * * Did you ever get a warrant against Willie Currie as a result of using Betty Harris? * * * Did you ever send Betty Harris to make a buy from Ray Johnson? * * * Was he known to you as a dope dealer? * * * But you never explored that avenue of law enforcement [having Harris make buys], is that correct? * * * Did you send Betty Harris to see

a man named Castleman? * * * And you never sent her
to make a buy from him? * * * Is he a dope dealer?
* * * But you never explored that avenue of law en-
forcement, did you? * * * Did you send Betty Harris to
see a man named Whethers? * * * Was he known to
you as a dope dealer? * * * But you never sent her to
make a buy from him? * * * You never explored that
avenue of law enforcement? * * * Did you send Betty
Harris to see a man named Gaston? * * * Have you
heard about whether he is a dope dealer? * * * And
you never explored that avenue of law enforcement?
* * * Did you send Betty Harris to see a man named
Milfred Scott? * * * Have you heard that he is a dope
dealer? * * * You never sent her there to make a buy?
* * * Did you send Betty Harris to see a man named
Perdue? * * * Did she represent that he was a dope
dealer? * * * Did you send her to him to make a buy?
* * * You didn't explore that avenue of law enforce-
ment? * * * Did you send Betty Harris to make a buy
from Luke White? * * * Have you ever heard about
Luke White [being a dope dealer]? * * * About Jimmy
Robb, did you ever send Betty Harris to make a buy
from Jimmy Robb? * * * Have you ever heard that he
deals in dope? * * * But you didn't send Betty Harris
there to make a buy? * * * You didn't explore that
avenue of law enforcement? * * * Did you send Betty
Harris to make a buy from Jesse West? * * * You have
heard that in fact he is dealing in dope? * * * And you
didn't send her there to make a buy? * * * You didn't
explore that avenue of law enforcement? * * * Why
didn't you send her to these people? * * * You never
arrested and got a warrant against any of these dope
dealers, did you? * * *

"Your testimony is that you never sent her to make a
buy with respect to any of these people you admit now
you knew were dope dealers, what I want to ask you is
did you take any other measures or steps in an attempt
to see that these known dope dealers, known to you,
were in fact put out of business or apprehended? * * *

"Do you know when the warrant for arrest was
effectuated on Willie Currie? * * * Did you have any-
thing to do with the preparation of the case that
resulted in the warrant? * * * Do you know that when

the officers executed the warrant that Willie Currie's place of business was closed down, there was no narcotics there? * * * With respect to the warrant against Ray Johnson, what specifically did you have to do with the procuring of that warrant? * * * Did you know that when the officers executed that arrest warrant, the place of business of Mr. Johnson, it was closed down and there was no narcotics there? * * * Now, you have made reference to a warrant against a man named Moore, what did you have to do with the procuring of that warrant? * * * You made reference to a Moss warrant, is that correct? * * * What did you have to do with preparation of that case? * * * Did you contribute any information that supported probable cause for the issuing of the warrant? * * * Did you ever give any names to either the Metro Squad or the Michigan State Police? * * * What names did you contribute?"

That line of inquiry was expanded to include a general inquiry regarding police reprimands and professional records:

"Were you a good policeman? * * * Tell us what you have done as a policeman that was improper? * * * Have you ever been reprimanded by a superior officer? * * * Tell us the last time you were reprimanded by a superior officer? * * *

"Now the date on which you received the reprimand for which you were suspended from duties, do you remember when that was? * * * Now, you have testified that you might have received other reprimands but that you couldn't remember them specifically, is that correct? * * * Does it refresh your recollection as to the fact of another reprimand? * * * Do you remember any other reprimands? * * * Did you receive a communication on the 27th of May, 1969 * * * from Lt. E. Acker reprimanding you? * * * Your memory has not been jarred as to any other official reprimands that you have received? * * *

"Were you ever fired from the Inkster Police Department? * * * When? * * * Why? * * * You were fired as a policeman because you were playing poker? * * *

What's the last time you played poker? * * * Were you fired for playing poker at that time?"

The prosecutor questioned Lt. Reid concerning the number of arrests and convictions Duncan and McIntosh had obtained of narcotics offenders and the possibility of a leak in the department. In evaluating these questions it is noteworthy that Lt. Reid conceded that none of his officers were particularly effective in apprehending dope dealers and that Duncan and McIntosh were not full-time narcotics officers but general detectives who devoted the bulk of their time to other police work.

The prosecutor's opening statement made reference to and his closing arguments concentrated on the similar acts evidence, asserting that it showed that Duncan and McIntosh were crooked cops, *i.e.,* he exploited the similar acts evidence for the purpose—propensity to commit a particular offense or offenses generally—for which all agree it may not be used.

In his closing arguments the prosecutor made frequent reference to an "on going conspiracy" (not charged), reviewed the testimony concerning Duncan's and McIntosh's spending activity, surveyed the narcotics problem in Inkster and emphasized the corrupting effect of heroin on society. He argued the ineffectiveness of Duncan's and McIntosh's efforts to reduce the narcotics problem in Inkster: "Did and do the names Duncan and McIntosh strike terror into the hearts of the dope dealers in Inkster? I don't think so and I don't think you think so either."[31]

_____

[31] The following excerpts from the prosecutor's closing arguments are illustrative:

"During the trial when it was made to appear to you that Duncan despite his reported efforts in the area of drug control had in fact effectuated nothing * * * .

" * * * Duncan himself told you that when they went to effectuate

The prosecution's case depended almost entirely

an arrest on the Currie warrant that when they got there, when the police got there, Currie wasn't there and there wasn't any dope. Who tipped Currie?

\* \* \*

"Duncan said he owned six suits, he has worn more than six suits during this trial. Duncan hasn't been working for four months, but he drives an Oldsmobile 98. He goes to the track two, three nights a week and dropped $24 of borrowed money the Friday before he testified.

\* \* \*

"McIntosh took a different approach in testifying. He, too, was unnaturally and unreasonably evasive and forgetful. But then he began to testify in a way that I'd like to characterize to you as *my first experience* with creative testifying [emphasis supplied]. \* \* \*

\* \* \*

"This case has been thoroughly investigated. This case is before you because it needs to be before you.

"These defendants were charged with these criminal offenses because they deserved to be convicted. The defendants have testified that they told you they didn't do it. Would you expect them to do otherwise?

"Power, duty, responsibility, you have the power to set guilty men free no questions asked. You have the duty without compassion or sympathy to correctly ascertain the true facts of this case. You have the responsibility of maintaining our civilization and our society and insuring that abhorent and unacceptable acts do not go uncensored. I ask you to do so and to convict both of these men."

"First, let me say this, we have been talking rather casually, I think too casually, about dope and about dope dealers. When we have mentioned dope at this trial we are talking about narcotics, about heroin. *Heroin is that substance which is corrupting our society. Heroin is that substance which is destroying our children. I think it is important for you to appreciate the significance of what we have been talking about at this trial* [emphasis supplied].

\* \* \*

"[T]here is enough before you so that you may and should conclude that these defendants had sources of income other than their salaries, $11,000 or $12,000 a year, $69 a week child support payments, two homes, two or three nights a week at the track, $2,500 deposit in the credit union, Oldsmobile 98, Lincoln Continental, these facts don't prove anything. I didn't argue to you when I spoke before that that proves anything. I presented this evidence so that you might draw an inference if you choose to.

\* \* \*

"Make your decision carefully, for you must live with it. Make your decision carefully for the citizens of the City of Inkster must live with it.

"Power, duty, responsibility, you have the responsibility of preserv-

on the testimony of Harris, a drug addict who had worked for Duncan and McIntosh as a paid informant. When first questioned by police she said it was Broadnax who had offered to pay a bribe and later, while in jail—admittedly angry with Duncan and McIntosh for failing to protect her—suffering withdrawal, she offered to change her story and was immediately released and taken to a hospital. At the time of trial she was in a methadone program and Broadnax was on probation.

Harris' unsubstantiated testimony of "similar" acts and the innuendo of the life style and professional record questioning diverted attention from the quality of the people's evidence on the charged offense to whether Duncan and McIntosh were good police officers. The focus of the trial was shifted to the nonissue of whether Duncan and McIntosh had received and spent protection money from and had made a sufficient effort to apprehend and convict dope dealers and had otherwise conducted themselves as good policemen.

## VIII

In sum, the words attributed by Harris and Broadnax to Duncan and McIntosh were not ambiguous. Duncan's and McIntosh's asserted acts of solicitation were not equivocal. If, as Harris and Broadnax claimed, Duncan and McIntosh solicited a bribe, the requisite felonious intent may readily be inferred.

Duncan and McIntosh did not concede the act of solicitation and claim that they were enticing or detecting. No money was paid and, therefore, cases

ing our civilization, of maintaining our society, of ensuring that abhorent and unacceptable acts do not go uncensored. I ask you to return a verdict that both of these defendants are guilty as charged."

where the gist of the offense is the payment of money[32] are not in point.

The similar acts evidence was not admissible.

The judge did not exercise his discretion.

The similar acts testimony and the "ancillary" cross-examination of Duncan and McIntosh nominally offered to characterize their intent in soliciting a bribe characterized them, in actuality, as bad cops in violation of the principle that similar acts may not be admitted to show that the defendant is a bad man.

Duncan and McIntosh did not receive a fair trial.

I would reverse and remand for a new trial at which similar acts evidence may be admitted only if Duncan and McIntosh offer an enticement defense.[33]

KAVANAGH, C. J., concurred with LEVIN, J.

BLAIR MOODY, JR., J., took no part in the decision of this case.

---

[32] *See* fns 19 and 20, *supra,* and accompanying text.

[33] If the prosecutor asserts that some part of the people's evidence tends to establish such a defense and that he is concerned that defense counsel may, after completion of the proofs, argue such a defense, the judge may inquire into the matter and, if defense counsel disclaims any such defense, enter an appropriate protective order excluding collateral evidence having such a tendency and any reference to such a defense.