Chief Judge Breitel.
Defendant, former President of the Lackawanna School Board, appeals from a conviction, upon a jury verdict, for the felonies of bribe receiving (Penal Law, § 200.10) and receiving a reward for official misconduct (Penal Law, § 200.25) and two misdemeanors of official misconduct (Penal Law, § 195.00, subds. 1, 2). The conviction arose from defendant’s alleged solicitation of a “ kickback ” from the general contractor of a school construction project. He was sentenced to concurrent terms of imprisonment up to four years.
Defendant contends that there was reversible error in admitting proof, over objection, that the architect on the project had previously made unlawful payments to defendant. Defendant had never been indicted for these payments. Under the facts presented there was no proper purpose for such proof on the case in chief and the conviction should therefore be reversed.
The school board was responsible for awarding construction contracts. The criminal charges against defendant stem from a meeting with a general contractor who had bid on a contract for the construction of an addition to an elementary school. According to the contractor, the architect had given him two telephone numbers and stated that before acceptance of the bid the board wished to speak with him. Later that evening the contractor called one of the numbers and defendant answered. A meeting at a restaurant was arranged for the next day, at which only defendant and the contractor were present. Defendant, purporting to speak on behalf of the board, advised the contractor that the board customarily received 10% of the contract price. The contractor testified that he refused to pay.
The architect testified that he had designed the project for an architect’s fee of 10% of the cost of construction. He said that he had paid to the defendant, in cash, 20% of each fee check he had received. These payments, he said, were pursuant to an “ arrangement ” and were neither a gift nor repayment of a loan. He testified further that defendant had requested him to have the general contractor get in touch with defendant.
*84 Defendant testified and denied receiving any payments from the architect or making any corrupt agreement with him. Defendant admitted meeting the general contractor but said that the meeting took place after the contract had been awarded. By defendant’s account, the meeting was requested by the contractor. He asked to be relieved of the contract because his bid had been too low, and then he became exercised over defendant’s response that it was too late. Defendant denied any solicitation from the contractor.
Evidence of unconnected, uncharged criminal conduct is inadmissible if the purpose is to establish a predisposition to commit the crime charged (People v. Dales, 309 N. Y. 97, 101; Coleman v. People, 55 N. Y. 81, 90). The basis for the rule is the fear that a jury might convict not for the crime charged, but because, as evidenced by other criminal conduct, the accused is a person deserving of punishment (People v. Molineux, 168 N. Y. 264, 292; see, also, People v. Zackowitz, 254 N. Y. 192, 198).
When evidence of uncharged criminal conduct is offered for a relevant purpose other than to establish criminal propensity, it may be admissible (see, e.g., People v. McKinney, 24 N Y 2d 180, 184; People v. Gaffey, 182 N. Y. 257, 262; People v. Molineux, 168 N. Y., at pp. 291-294, supra). Jury instructions limiting the purpose for which evidence of uncharged crimes is offered are not always adequate; and this court has, on occasion, reversed convictions where the probative value of the uncharged crime was considered substantially outweighed by its prejudicial effect (see, e.g., People v. McKinney, supra, at p. 185; People v. Liller, 20 N Y 2d 727, and dissenting opn., esp. at pp. 732-733).
The only purpose suggested for the architect’s testimony was to show a common scheme or plan to receive similar corrupt payments from those engaged in the particular project (see People v. Harvey, 235 N. Y. 282, 290; People v. Molineux, 168 N. Y., at pp. 293, 305-310, supra). From the existence of this plan or scheme the jury could infer that defendant solicited a kickback from the contractor (see 2 Wigmore, Evidence [3d ed.], § 304, p. 202).
There are the exceptional circumstances which permit proof of other criminal conduct to establish a common scheme or plan (see People v. Molineux, supra, and cases cited). Mere simi *85 larity, however, between the crime charged and the uncharged crime is not sufficient; much more is required. There must be “ such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations ” (2 Wigmore, Evidence [3d ed.], § 304, p. 202). In this State, the courts have been particularly cautious in permitting proof of uncharged criminal acts to establish a common scheme or plan.
Thus, in People v. Grutz (212 N. Y. 72) an arson conviction was reversed because of testimony regarding several uncharged arsons. Defendants Grutz and Stein had been charged with the arson of a dwelling owned by one Gold. The prosecution theory was that Grutz, an insurance broker, and Stein had entered into a conspiracy whereby persons, such as Gold, would insure their household effects through Grutz and then Stein would set a fire to destroy the property.
The prosecution offered proof of an agreement between Stein and Grutz, but also elicited testimony from Stein about nine other incendiary fires involving property insured through Grutz. While concluding it proper to prove the agreement between Grutz and Stein the court held it reversible error to receive evidence of other unconnected, uncharged arsons. The court observed (p. 79) “ that each of the nine other fires was a separate and independent transaction entered into as the occasion arose and not in pursuance of any preconcerted general plan or design. There was between them no such relationship of time, place or circumstance that the bare evidence as to the origin of any one of these fires, in and of itself, tended to prove the origin of the Gold fire ”. Gruta, in effect, holds that it is impermissible to offer proof of uncharged crimes committed pursuant to a common plan unless the uncharged crimes support the inference that there exists a single inseparable plan encompassing both the charged and uncharged crimes, typically, but not exclusively, embracing uncharged crimes committed in order to effect the primary crime for which the accused has been indicted. The rule of exclusion, of course, is not always compelled by logic, because on the contrary the evidence is often logically relevant. The rule rests on grounds of policy in the criminal law (see People v. Zackowitz, 254 N. Y., at pp. 192, 197-198, supra).
*86 People v. Duffy (212 N. Y. 57), decided the same day as the Grutz case, does not suggest a less rigorous standard. In the Duffy case, a police sergeant was charged with' taking a bribe on a particular day for permitting one Both to maintain a gambling house. The prosecution established a scheme to collect corrupt payments from gambling houses in a given area in a precinct. Following a division of the precinct, some houses, previously in police officer Fox’s area, were now in an area covered by defendant Duffy. Fox testified that Duffy had sought and received from him a list of gambling operators from whom Fox had been collecting money. The prosecution offered the testimony of Both and three other gambling operators that they had made monthly payments to Fox prior to the change in the precinct. The three, other than Both, also testified that after the precinct change they made payments to Duffy. In ruling that the evidence of uncharged bribes to both Duffy and Fox was admissible the court reasoned that: “ [m]easured by the tests of ordinary experience and common sense, there cannot be any doubt that this evidence that the defendant was collecting bribes of certain lawbreakers in his precinct in connection with the other supplementary evidence which was produced tended to establish a systematic plan for the collection of graft which would naturally include Both who, at the same time in the same quarter and under the same circumstances, was pursuing the same kind of an unlawful business ” (People v. Duffy, 212 N. Y., at pp. 67-68, supra).
The difference in result between the Duffy case, on the one hand, and the Grutz case, on the other, is the very close relationship in Duffy between the scheme or system and the many bribes which had been regularly received first by Fox and then by Duffy from the same owners of various gambling houses (see, also, People v. Ryan, 12 A D 2d 841, 843; cf. People v. Warder, 231 App. Div. 215, 219-220). On the other hand, in the Grutz case, the several fires were separate, independent transactions, separately planned and effected, albeit due to an initial overall agreement between the two culprits.
Beturning to this case, there is no evidence of a single scheme to collect corrupt payments from the architect and the contractor other than the inference to be drawn from the payments by *87 the architect, and defendant’s request to the architect to advise the contractor to get in touch with defendant. The only relationship between the payments and the solicitation are their close similarity and that a single construction project was involved. Contrary to the facts in People v. Duffy (supra), there was no equivalent identity of time, place and circumstance, or of persons from whom payments were to be exacted, between the crime charged and the uncharged- offenses. The close similarity of the bribery attempts in this case, with arguably insubstantial “ identities ”, does not support an inference that there existed a common scheme or plan, in the sense of the ruling cases, encompassing both the contractor and the architect, although that may well have been the fact (compare People v. Harvey, 235 N. Y., at p. 290, supra, with People v. Ryan, 12 A D 2d, at p. 843, supra; People v. Warder, 231 App. Div., at pp. 215, 220, supra, see, generally, Ann., Bribery — Evidence of Other Bribes, 20 ALR 2d 1012, 102A-1032).
Moreover, in Duffy and in Grutz, it happens that there was direct testimonial evidence of a scheme or plan, not that circumstantial evidence of a common scheme or plan will not suffice. In Duffy, too, there was evidence of a considerable number of bribes over an extended period of time from the same persons, involving the same gambling places, establishing circumstantially a single scheme to take bribes. In short, merely showing two or more similar crimes does not necessarily establish a common scheme. To some extent every criminal repeater has a modus operandi. But a modus operandi alone is not a common scheme; it is only a"repetitive pattern. This is not to say, however, that in establishing a common scheme in a proper case it might not be admissible to show a modus operandi, as one of the elements of proof.
Since a new trial is required it is necessary to comment on the prosecutor’s inquiry of defendant, about his refusal, after being subpoenaed, to waive immunity and testify before the Grand Jury (cf. Grunewald v. United States, 353 U. S. 391, 418-424). To bolster his denials, defendant, on redirect examination, testified that before indictment he was not asked, by the District Attorney or any other person, to make a statement. In fact, he had been called to the Grand Jury but was not permitted to testify because he refused to waive immunity. If defendant’s *88 trial testimony was inconsistent with his refusal to waive immunity then the refusal could be used for impeachment purposes, notwithstanding any constitutional bar to using the refusal as evidence in chief (cf. People v. Kulis, 18 N Y 2d 318; Harris v. New York, 401 U. S. 222; Walder v. United States, 347 U. S. 62). In developing, however, the opportunity of the defendant to have testified before the Grand Jury, it would have been better if the prosecutor would have avoided the facts of the demand upon and the refusal by defendant to sign a waiver of immunity; it would have been enough to show that he had had some, kind of opportunity before indictment to give his version of the transaction.
Accordingly, the order appealed from should be reversed, the conviction vacated, and a new trial ordered.
Judges Jasen, Gabrielli, Jones, Wachtler, Rabin and Stevens concur.
Order reversed, etc.