OPINION OF THE COURT
Harold J. Rothwax, J.
The instant proceeding involves 14 separate indictments. Of *192 the defendants named therein, three have been indicted twice, individually; two others have been jointly indicted twice; another has been indicted once; two others have been jointly indicted once; another two have been indicted twice, once jointly and severally; and yet another group of four has been jointly indicted, for a total of 14 defendants. The People move to consolidate the 14 indictments and 14 defendants in a single trial pursuant to CPL 200.40 (2).
This series of indictments arose out of an investigation into the use of coercive practices to force legal tenants from their apartments, allegedly for the commercial benefit of their landlords. A group of 21 people, led by Morris Lender and Hardmon Lambert (the Lender-Lambert group), was found to have moved from building to building in New York County over a period of five years, from 1979 to 1984, threatening, intimidating, menacing, assaulting and burglarizing tenants and otherwise destroying the property of established residents, resulting in the total or almost total depopulation of at least 20 buildings. There is reasonable cause to believe that Lender and Lambert directed these activities pursuant to agreements with owners of each building, whereby a fixed price would be paid for each tenant who surrendered an apartment as a result of the group’s practices. Lender, Lambert and all but two of the apprehended members of their group have pleaded guilty to conspiracy, coercion, burglary and related charges.
Twelve of the 14 remaining defendants are owners of buildings vacated or attempted to be vacated by the Lender-Lambert group. Each of these defendants is charged with having conspired with the Lender-Lambert group to commit coercion and other crimes by forcing their legal tenants to abandon their apartments, and with multiple counts of coercion and grand larceny in regard to each of their individual tenants. The People concede that there is insufficient evidence to link all 12 landlords together in a single conspiracy. There is no proof that any landlord was motivated by anything other than his own economic interest, or shared any intent to commit crimes against tenants other than those as to whom he had such an interest. The evidence suggests that each owner or group of owners dealt directly and separately with Lender and Lambert, according to building. No one aspect of the operation depended upon or even related to the success of any other, beyond consideration of the availability of the Lender-Lambert group. It cannot be said, therefore, that each landlord who employed the Lender-Lambert group of necessity knew the *193 scope of the operation and shared all of its purposes. (Cf. e.g., United States v Agueci, 310 F2d 817 [2d Cir 1962], cert denied 372 US 959; United States v Bruno, 105 F2d 921, 922 [2d Cir 1939], revd on other grounds 308 US 287.)
This was, rather, a wheel conspiracy, in which the landlords were the " 'separate spokes meeting in a common center’ ” which was the Lender-Lambert group, without any "rim of the wheel to enclose the spokes.” (Kotteakos v United States, 328 US 750, 755 [1946].) Neither actual knowledge that other landlords were using Lender-Lambert (see, e.g., United States v Varelli, 407 F2d 735, 743 [7th Cir 1969]), nor the similarity of methods and purposes of the various landlord-Lender-Lambert arrangements (United States v Varelli, supra, at p 743; United States v Baxter, 492 F2d 150, 158-159 [9th Cir 1973]) establishes such a linkage. What is required is evidence of a commonalty of interest in addition to knowledge and method.
There were subsidiary groups of landlords as to whom such an interest has been shown. Specifically, and by way of illustration, the defendants Leisner and Marx (indictment No. 8144/84) not only were aware of each other’s use of the Lender-Lambert group to vacate buildings each owned separately, they also jointly purchased, and employed Lender-Lambert to vacate, a series of six buildings from December 1978 to July 1980. These defendants thus acted together to employ the Lender-Lambert group to vacate buildings for their mutual benefit. The existence of their partnership extended the economic benefits derived from each defendant’s use of the scheme to both. This mutuality of economic interest augmented the influence of each defendant in regard to the Lender-Lambert group and enabled them to coordinate their efforts. In other words, it established a rim between the Leisner and Marx spokes sufficient to bring them together with the Lender-Lambert group in a single conspiracy. (See, e.g., United States v Tilton, 610 F2d 302, 307 [5th Cir 1980]; United States v Bernstein, 533 F2d 775, 791 [2d Cir 1976], cert denied 429 US 998; United States v Friedman, 445 F2d 1076, 1080 [9th Cir 1971]; United States v Flick, 516 F2d 489, 494 [7th Cir 1975], cert denied 423 US 931.)
The People’s position is that although there were seven* *194 separate conspiracies, each involving different landlords and the Lender-Lambert group, these conspiracies are nonetheless "related” in terms of similarity of objective, means of execution, and commonalty of members (the Lender-Lambert group). The People urge the court to accept this similarity among the various conspiracies as an adequate predicate for consolidation of all the charges of conspiracy and all substantive crimes allegedly undertaken pursuant to each. The People argue that recent amendments to CPL 200.40 (1) (b), (c) (L 1984, ch 672, §§ 2, 3) make the State statute substantially equivalent to Federal law, which Federal precedent the People would have the court apply.
The court finds, however, that there is a significant variation between the recent amendment to CPL 200.40 and Federal statutes. The applicable Federal rule states: "Two or more defendants may be charged in the same indictment * * * if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.” (Fed Rules Crim Pro, rule 8 [b].) Under this Federal rule, courts have permitted joinder of concededly separate but "related” conspiracies involving some of the same defendants. (See, e.g., Series of Acts or Transactions, Ann., 62 ALR Fed 106, 117, § 7.) The Supreme Court has described "related” conspiracies as "adventures of like character” having separate "though similar, purposes”, as opposed to "the common purpose of a single enterprise” which constitutes a single conspiracy. (Kotteakos v United States, 328 US 750, 769, supra.) The required relationship has been characterized as "different from an overall common purpose required for a finding of a single conspiracy. The nexus, as stated in Rule 8, is at least concerned with the identity of parties to the transaction, the character of the transaction, the modus operand!, the area of operations, the lapse of time, etc.” (United States v Varelli, supra, at p 747.) Such a nexus may arguably exist among the conspiracies charged in these indictments. The court holds, however, that more is required for consolidation under our State statute.
The purpose of recent amendments to CPL 200.40 was to "ease court congestion and reduce the burdens on crime victims who were required to testify at multiple trials” by *195 allowing joinder of defendants in a single prosecution for offenses "based upon a common scheme or plan” (CPL 200.40 [1] [b]) or "committed during the course of a single criminal transaction” (CPL 200.40 [1] [c]), even though all defendants are not charged with every offense to be tried (CPL 200.40 [1] [a]; see, CPL 200.40 [former 1]; Bellacosa, Supplementary Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 200.40, 1984-1985 Pocket Part, p 53). On the face of the amended statute, the court finds no basis for the joinder of separate but "related” conspiracies.
The central element in the crime of conspiracy is agreement (see, e.g., People v Schwimmer, 66 AD2d 91, 94 [2d Dept 1978], affd 47 NY2d 1004; compare, United States v Rosenblatt, 554 F2d 36 [2d Cir 1977]). Agreement means " 'concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose’ ” which is or contemplates the commission of substantive crimes (Marino v United States, 91 F2d 691, 694 [9th Cir 1937]; see, People v Ozarowski, 38 NY2d 481 [1976]). The court finds no distinction between a single conspiracy and "a common scheme or plan” upon which "all the offenses charged are based”. (CPL 200.40 [1] [b]), or "a group of acts * * * so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture” (CPL 40.10 [2] [b]; incorporated by reference CPL 200.40 [1] [c]).
The phrase "common scheme or plan” is a term of art derived from the common law of evidence, where it is used to determine the admissibility of evidence of uncharged crimes to prove the defendant’s commission of the crime charged. It is often improperly equated with the concept of an unusual modus operand! as evidence of identity (see, Matter of Brandon, 55 NY2d 206, 212-213 [1982]). In fact, to establish a "common scheme or plan”, "[m]ere similarity * * * between the crime charged and the uncharged crime is not sufficient; much more is required. There must be 'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations’ (2 Wigmore, Evidence [3d ed.], § 304, p. 202)” (People v Fiore, 34 NY2d 81, 84-85 [1974]).
Offenses which are the "individual manifestations of a general plan” which has motivated the offenders to commit them, of necessity, constitute aspects of a single conspiracy (see, e.g, United States v Varelli, 407 F2d 735, 742, supra; cf. Blumenthal v United States, 332 US 539, 557 [1947]). This is *196 apparent from comparison of the cases used in Fiore (supra) to demonstrate the rule of evidence. On the one hand, in People v Grutz (212 NY 72) the court held that evidence of uncharged arsons would be inadmissible to prove the arson charged, because they were "separate, independent transactions, separately planned and effected, albeit due to an initial overall agreement between the two culprits” to insure, and then to destroy, the property insured, by fire (34 NY2d, at p 86; emphasis added). On the other hand, in People v Duffy (212 NY 57) evidence of a series of periodic payments by a group of gamblers to the defendant police sergeant and to his predecessor was held to be admissible to prove the single bribe charged, since there was proof that all of the bribes were made in the course of a "single inseparable plan encompassing both the charged and uncharged crimes”. (34 NY2d, at p 85; emphasis added.) A common scheme or plan in the evidentiary context is, therefore, defined by that singularity of purpose which also characterizes a single conspiracy.
Moreover, the statutory definition of a single criminal transaction as the relation of "acts * * * so close * * * in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture” (CPL 40.10 [2] [b]) is almost verbatim Wigmore’s definition of a common scheme or plan as the common cause of " 'acts * * * which * * * are [its] individual manifestations’ (2 Wigmore, Evidence [3d ed.], § 304, p. 202)” (People v Fiore, supra, at p 85). The court does not understand the People to contend that these events involving 28 defendants at more than 20 locations at various periods during an interval of five years were "so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident”. (CPL 40.10 [2] [a]; 200.40 [1] [c]; cf., e.g., People v Pabon, 96 AD2d 870 [2d Dept 1983].)
In any event, the incorporation by reference within CPL 200.40 of the definition of a criminal transaction as that term is used in context of statutory prohibition against repeated prosecution for the same crime (CPL 40.10 [2]; 40.20 [2]) also tends to negate the People’s position. If related but separate conspiracies were included within the scope of a single criminal venture under CPL 40.10 (2) (b) unwonted results would ensue in terms of statutory bar to prosecution. Specifically, all similar agreements entered into by any defendant prosecuted for conspiracy and all acts undertaken by that defendant pursuant to any of the agreements would have to be prose *197 cuted in a single proceeding or otherwise be exempt from prosecution, as to that defendant. This interpretation effectively mandates multiple conspiracy prosecutions any time one defendant is found to have engaged in a series of separate but similar criminal agreements with different persons to effect similar purposes. Since the charge in each instance would be identical, that is, conspiracy, and since the conspiracies would necessarily be factually related, any exception to the statutory bar would be unavailing (CPL 40.20 [2] [a], [b]; see, Matter of Abraham v Justices of N Y. Sup. Ct. of Bronx County, 37 NY2d 560, 566 [1975]). Such mandatory joinder of separate conspiracies is contrary to the plain intention of the framers of the amended consolidation statute to preserve judicial discretion in all cases (CPL 200.40 [1]).
The effect of the amendments to the consolidation statute in regard to prosecution for conspiracy is to permit the joinder in a single proceeding of all aspects of the single conspiracy, including all defendants and all substantive offenses committed pursuant to the conspiracy, even though not every defendant is chargeable with each substantive offense (see, People v McGee, 49 NY2d 48, 56-58 [1979]). The court holds, however, that separate conspiracies, "related” though they may be as a "series of * * * transactions” within the Federal statute, are not thereby subject to consolidation or joinder in a single indictment under our State statute (CPL 200.40; cf. Fed Rules Crim Pro, rule 8 [b]).
In the interest of clarity, the court also holds that consolidation of these indictments beyond the scope of the several conspiracies actually proven would be inappropriate even under the Federal standard. All of the factors which led the court in Kotteakos v United States (328 US 750, 766-777, supra) to reverse the conviction of members of eight separate conspiracies improperly joined together in a single trial are also present here. "The sheer * * * numbers, both of defendants and of conspiracies proven * * * the burden of defense to a defendant, connected with one or a few of so many distinct transactions, is vast * * * not only in preparation for trial, but also in looking out for and securing safeguard against evidence affecting other defendants” (328 US, at pp 766-767). "The dangers of transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, are so great that * * * prejudice to substantial right” is inevitable (328 US, at p 774).
On the other hand, insofar as the individual conspiracies *198 were organized according to building, and according to ownership or to mutual assistance in regard to each building, the scope of each conspiracy precisely encompasses all of the substantive crimes and, hence, all of the victim-witnesses in regard to any given conspirator landlord. In other words, there is no overlapping of testimony of alleged crime victims from one conspiracy to another. Therefore, separately prosecuting each conspiracy imposes no unnecessary burden on these witnesses. The court is not concerned about the burden upon admitted accomplices to all of the transactions who were members of the Lender-Lambert group. Neither the coincidence of members nor similarity of methods and goals among conspiracies is a sufficient reason for consolidation where the evidence required to establish such similarities is discrete according to each conspiracy (see, e.g., United States v Marionneaux, 514 F2d 1244, 1248-1249 [5th Cir 1975]; United States v Bertolotti, 529 F2d 149, 156-157 [2d Cir 1975]; see generally, Right of Defendants in Prosecution for Criminal Conspiracy To Separate Trials, Ann., 82 ALR3d 366, 412-413, § 8).
The motion to consolidate is, therefore, denied, except as to the following indictments involving defendants as to whom the evidence has established a single conspiracy:

Insofar as the events in regard to 601 East 11th Street were not proved to have been undertaken pursuant to the single conspiracy charged in indictment No. 8144/84, counts 40-54 of that indictment are severed as to the defendant Marx. Count *199 1 of indictment No. 8144/84 is amended to delete from the conspiracy references to 601 East 11th Street on pages 2 and 9; the last paragraph on page 6 and first complete paragraph on page 7, and overt acts 87 through 96 (see, e.g., Overstreet v United States, 321 F2d 459, 461 [5th Cir 1963], cert denied 376 US 919; People v Spann, 56 NY2d 469 [1982]).
The defendants’ motions in regard to severance and in opposition to consolidation are denied except to the extent indicated herein.

 The court finds eight separate conspiracies. The evidence in regard to indictment No. 8144/84 failed to establish that defendant Leisner’s use of the Lender-Lambert group to vacate 601 East 11th Street, two years after the previous joint endeavors of Marx and Leisner ended in July 1980, was *194 undertaken pursuant to any agreement or even with the knowledge of Marx. Accordingly, 601 East 11th Street is a separate Leisner-Lender-Lambert conspiracy.