OPINION OF THE COURT
Gtjstin L. Reichbach, J.
Pursuant to People v Molineux (168 NY 264 [1901]) and its progeny, while a person on trial charged with a p£jrticular crime may not be shown to be guilty by evidence showing he has committed other crimes, evidence of other crimes is admissible when such evidence tends to establish the particular crime on trial by demonstrating motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or tends to establish the identity of the person charged with commission of the crime on trial. The District Attorney, pursuant to People v Ventimiglia (52 NY2d 350 [1981]), by written request of August 30, 2007, seeks to introduce at the defendant’s trial on an indictment charging him with four counts of intentional homicide, a long litany of alleged prior bad acts claiming they are competent to prove these specific charges. The People claim that such evidence is either directly relevant to or probative of one or more of the elements of the charged crime, as well as defendant’s identity, motive and intentional participation as an accomplice of Gregory Scarpa Sr. in these four murders.
The court would initially note that the People rely on the motive exception under Molineux to present evidence on certain prior bad acts and/or uncharged crimes. As an example under this exception, notwithstanding that receiving monies is not an element of the crime of murder, allegations that the defendant received cash payments from Scarpa are relevant on this issue. It bears on the question of why a supervising agent of the FBI would be providing confidential law enforcement intelligence to an organized crime killer. It also “completes the narrative” regarding these transactions. (People v Crossland, 251 AD2d 509 [2d Dept 1998]; People v Dodson, 243 AD2d 644 [2d Dept 1997].) However, the People’s further reliance on the grounds of identity and intent as additional bases for its Molineux application seems misplaced. Identifying the defendant as the perpetrator of other tjad acts has little bearing on whether or not the de *992 fendant gave the information specifically charged in this case. There is no unique modus operandi tying these crimes together. What does tie them together, as discussed at great length below, is that they’re all allegedly part of an ongoing corrupt criminal relationship in which the defendant provided confidential law enforcement intelligence to Scarpa, including the intelligence that led to the four murders charged in this indictment. As to intent, this is not the type of case where evidence is admissible because the act itself is ambiguous and is not, standing on its own, necessarily indicative of criminal intent. Unlike the uncertainty of criminal intent in, for instance, the act of passing counterfeit money, providing secret police intelligence information to a Mafia murderer, purposefully revealing information that these individuals are potentially informants or the location of rivals, directly permits an inference of intent by the very act itself. Other bad act evidence is not needed to establish the criminal intent involved in such illicit revelations.
The court is constrained to note that the People have, in connection with their Molineux application, failed to explicitly raise the most persuasive basis for the admission of many of these purported bad acts: that all of these acts were part of a common plan involving the commission of multiple crimes all related to an ongoing criminal agreement to provide confidential police information to Scarpa.
The defense raises five general grounds for the exclusion of all of the alleged bad acts proffered by the District Attorney. One or more of these grounds form the basis for the defense’s specific objections to each item offered by the People. Before discussing the application of each of these objections to the specific bad acts the District Attorney seeks to present, some general analysis is appropriate.
The defense’s first ground for exclusion is that many of these allegations of prior bad acts implicate evidence which it claims is derived from the defendant’s immunized testimony. Despite this conclusory defense assertion, such a finding is a question of law for the court to make based on a complete trial record.
The defense next contends that the District Attorney’s desire to introduce evidence about defendant’s protection of Gregory Scarpa and his failure to terminate Gregory Scarpa as an informant implicates defendant’s “federal immunity” defense. The court notes that this “federal immunity defense” was one of the bases on which the defendant sought to remove this prosecution to federal court: an application that was denied by the *993 Federal District Court. A claim of federal immunity is to provide immunity from a state court prosecution for an act committed in the performance of a federal officer’s official duties. As the district court judge noted, there can be no claim that the four murders alleged were committed in the course of the performance of official duties. Deliberately providing confidential police intelligence for the purpose of eliminating possible informants and rivals, revealing law enforcement surveillance and leaking confidential documents are not part of any federal duties. The act of protecting Scarpa or refusing to terminate him are not the acts for which defendant faces prosecution. Such evidence, however, may be relevant as circumstantial evidence of the ongoing criminal relationship between the defendant and Scarpa to provide confidential intelligence. This issue is discussed at greater length below.
The claim that the defendant failed to reveal criminal activity he knew that Scarpa, his informant, was involved in, and his refusal to terminate him as an informant pursuant to administrative guidelines, is not directly probative of the claim that the defendant purposefully provided secret intelligence to aid and abet his informant in murdering the four people as charged in the indictment. A law enforcement agent can violate administrative regulations regarding relations with informants and still not enter into a criminal relationship to provide confidential police information, knowing it will result in murder. That the defendant may have stepped over the line in protecting his informant, or even violated administrative regulations in failing to terminate him, is not the legal equivalent nor probative of affirmatively joining forces with Scarpa and providing confidential intelligence so that his informant could murder these people. However, while such actions are not directly probative of the defendant’s commission of the offenses for which he is charged, it is relevant circumstantial evidence tending to establish the ongoing criminal relationship and a common plan to commit multiple crimes so related to each other that proof of one tends to establish commission of the other. It is true that certain of the items proffered by the District Attorney have little relevance to the charges presented and can be proffered only for the purpose of demonstrating propensity. Such items, of course, will be precluded.
Next the defendant objects that the evidence being offered is both misleading and contradicted by other evidence. That, of course, is a question not of admissibility but of the credibility *994 and the weight to be afforded such evidence: a determination to be made by the finder of fact.
Finally, the defense contends that certain of the evidence being offered is inadmissible opinion testimony. Such testimony will be excluded unless it is the type of evidence for which an opinion may be rendered and the opinion is proffered by a suitably qualified expert.
Resolution of the most difficult aspects of the Molineux application requires a discussion of the nature of the specific charges against the defendant. The defense urges that each of the four murders charged in the indictment has to be viewed on its own, as independent crimes separated by time and place and motive and without reference to the ongoing relationship between the defendant and Scarpa. The defense argues that each of the four murders charged is a unique, individual transaction, each supported by a different motive and, consequently, proof of additional uncharged crimes or bad acts cannot be admitted because, as separate crimes, there is no common scheme or plan connecting them. In support of this proposition they cite People v Fiore (34 NY2d 81 [1974]) and People v Grutz (212 NY 72 [1914]). In Fiore, the Court found that taking two separate bribes from two unrelated subcontractors in connection with work on a single construction project did not establish a common scheme or plan. The Court instructed that “[m]ere similarity .. . between the crime charged and the uncharged crime is not sufficient” and that more is required (Fiore at 84-85). The Court in Fiore did, however, affirm the admission of such evidence where there is “such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations (2 Wigmore, Evidence [3d ed.], § 304, p. 202)” (Fiore at 85).
The District Attorney contends that these alleged prior bad acts provide the necessary context and are evidence of an ongoing criminal relationship between the defendant and Scarpa, with allegations of continuing payments and favors for the continuing provision of confidential information, including the information resulting in the four murders charged. Despite the defense claims that many of these alleged prior bad acts are being admitted only “to demonstrate that there existed a generally corrupt relationship between defendant and Scarpa” and therefore are designed to impermissibly demonstrate propensity on the part of the defendant, proof of certain aspects of that relationship are necessary to put the defendant’s actions in *995 context. Why would a high-ranking FBI agent provide a notorious organized crime figure with secret intelligence and provide it repeatedly? Evidence that this was an ongoing course of conduct with the defendant repeatedly providing confidential intelligence information is admissible to support the inference that there existed a single inseparable plan, an ongoing criminal relationship to provide confidential intelligence which encompassed both the charged and uncharged crimes. Such evidence is admissible not to prove propensity but for the limited purpose of proving an ongoing common scheme of which these murders were a part. (People v Duffy, 212 NY 57 [1914].)
Despite the best efforts of courts since 1914, it is difficult to square the reasoning of the Court of Appeals, which, on the same day, issued both the Duffy opinion and its opinion in Grutz. While never explicitly overruling Grutz, the reasoning of Judge Cardozo in his dissent in Grutz has come, not surprisingly, to represent the majority view that when the prosecutor is called upon to prove the existence of a criminal agency relationship, the People need to and are permitted to demonstrate the past and ongoing relationship between the parties in order to establish some regular, established and agreed course of dealing. As Judge Cardozo noted, the right to establish such criminal agency is not forfeited because proof of such relationship involves proof of other crimes. (Id. at 84.) Judge Cardozo further noted that if it is lawful to prove a criminal agency then the People are also able to prove continuing acts affirming that agency. Evidence of providing confidential police information on other occasions is proper circumstantial evidence to establish that the defendant and Scarpa were involved in an ongoing relationship of criminal agency and that providing information leading to these four homicides were individual manifestations of that ongoing criminal relationship. Of course, these other acts will not be considered unless they can be connected as part of a common ongoing scheme so related to each other to show that Scarpa and the defendant we¡re united for the accomplishment of a common criminal purpose; to wit, the provision of confidential law enforcement information to Scarpa.
Beyond the introduction of prior acts by the defendant allegedly providing Scarpa with confidential police information, the People also seek to introduce evidence to demonstrate that the defendant did not report his knowledge of Scarpa’s continuing criminal activity, interfered with law enforcement investigations of Scarpa, and failed to immediately terminate Scarpa as an *996 informant because of these known criminal activities, thereby violating various administrative guidelines for the FBI regarding their use of informants. There is a substantial difference between protecting an informant or source, even improperly and even illegally, and proactively joining in illegal activity with that source by providing confidential police intelligence. While evidence of additional acts of providing confidential information is admissible as direct evidence of an ongoing criminal scheme, protecting sources, either from prosecution or from firing as an informant, is a qualitatively different matter. While it is not directly probative of providing the confidential intelligence that led to the four murders charged, it is circumstantially relevant in establishing the ongoing relationship between the parties which is the context for the provision of this information. The court will receive certain of this evidence indicating that the defendant tried to protect Scarpa only for the limited purpose of establishing that there was an ongoing relationship between the defendant and Scarpa to provide the confidential information at issue here. If the court ultimately determines that the acts of protecting Scarpa are neither relevant nor probative on the issue of an improper criminal relationship to provide the information alleged in the indictment, or that an inference can be reasonably drawn that such actions were unconnected to providing the information at issue, the court will strike it from the record and not consider it.
The court will now turn to the specific acts that the prosecution seeks to introduce. In its first request, it seeks to introduce evidence regarding an additional homicide, that of Dr. Eliezer Scholnick, and more generally, to introduce evidence that the defendant interfered with law enforcement investigations of numerous crimes committed by Scarpa, that the defendant failed to inform his superiors of such criminal activity, indeed concealed evidence of this ongoing criminal activity of Scarpa from his superiors and failed, pursuant to the Attorney General’s guidelines, to immediately terminate Scarpa as an informant upon learning of such ongoing criminal activity. The District Attorney also seeks to introduce evidence that the defendant continued to communicate with Scarpa after his termination as an informant, and improperly reopened Scarpa as an informant, and attempted to interfere with Scarpa’s arrest.
The defense objects to the introduction of this evidence claiming, among other things, that much of it appears to be derived *997 from the defendant’s immunized testimony. While some of the allegations are discussed in part in the defendant’s immunized testimony, the court will not preclude the District Attorney from demonstrating independent sources, free of any taint, for this information. Unless the defense lawyers at the hearing in federal court in which the defendant gave his immunized testimony were simply conducting a fishing expedition, their cross-examination of the defendant would appear to be based on other information to which the District Attorney in this case might also have access.
The defense also contends that allegations of misconduct involving decisions to maintain Scarpa as an informant violate the defendant’s “federal immunity” defense. As previously indicated, the federal immunity defense bars a state prosecution for actions of a federal agent undertaken in the course of his duties. While prosecution for such actions may be barred, that does not preclude the prosecutor from using such actions as circumstantial evidence of the corrupt relationship to provide confidential information, including the information relating to the four murders charged in this case.
The murder of Dr. Scholnick is an entirely different matter. Proof of an additional homicide is, of course, highly prejudicial. Disclosure of this claim was made very late in the proceedings, long after the instant indictment was returned. To permit evidence on this issue would involve trying claims of a fifth homicide, would be cumulative of the claims regarding the four homicides charged, and seems designed to suggest defendant’s criminal propensities. Its prejudicial effect far outweighs any probative value in connection with the four homicides charged. Evidence on the Scholnick homicide will not be admitted.
Claims that the defendant engaged in various improper actions to protect his informant and maintain him as a confidential source will be received for the limited purpose of establishing an ongoing criminal relationship designed to provide Scarpa with a continuing stream of confidential information. Its consideration will be so limited, since as previously indicated, the motivation or intent to improperly maintain an informant is not probative of the claim of affirmatively providing that informant with confidential police information for the purposes of accomplishing four murders.
In its second proffer of bad acts the District Attorney repeats, with greater specificity, essentially the same claims discussed above. It details some of Scarpa’s criminal enterprises and al *998 leges that the defendant knew of this activity, failed to report it and failed to terminate Scarpa as an informant. The defense challenges the admission of evidence relating to these allegations, in the first instance based on its belief that the allegations will come from the testimony of Gregory Scarpa Jr. who, the defense claims, is prima facie tainted as a consequence of his exposure to the defendant’s immunized testimony. As indicated, the issue of the use of immunized testimony will be explored either in the context of the trial or on its conclusion.
The defense also raises again the issue of “federal immunity,” claiming that any actions the defendant undertook regarding his informant are inadmissible because they were done in connection with his official duties. These items will be received, not to establish a generally corrupt or improper relationship between the defendant and Scarpa, but for the limited purpose of proving an ongoing illicit relationship directed toward providing Scarpa with confidential intelligence, including the intelligence that led to the murders described in the four counts of the indictment. Whether or not these acts of protecting Scarpa are so related to the counts of the indictment charging him with revealing confidential police intelligence, thereby demonstrating that they were united for accomplishment of this common criminal purpose, is a question of fact. As indicated, if the court determines that such acts are not probative of this issue, they will be struck from the record and disregarded.
The third section of the District Attorney’s submission concerns claims that the defendant regularly accepted monetary payments and other gifts including stolen property from Scarpa. Such evidence is admissible to establish the defendant’s motive in providing the information alleged in the indictment and as further proof of an ongoing quid pro quo arrangement whereby the defendant would receive various rewards for providing confidential information to Scarpa.
The defense objects to the admission of such evidence claiming that it is only offered to establish that the defendant had a “generally corrupt relationship” with Scarpa and therefore to improperly suggest that the defendant had a propensity to engage in the criminal activity charged in the indictment. This objection is premised on the faulty defense argument that each of the four murders charged must be viewed in isolation and without reference to the ongoing relationship between the defendant and Scarpa. In this case, context is essential in establishing why the defendant, a law enforcement officer, would *999 provide Scarpa with confidential police intelligence and provide it repeatedly. This evidence is admissible to support the claim that there existed a single inseparable plan which incorporated both the charges contained in the indictment and other uncharged crimes.
The District Attorney next seeks to submit evidence that the defendant personally misappropriated monies that were intended to pay for his informant. The defense is correct that this allegation of theft in no way involves benefits received by the defendant for providing Scarpa with information or implicates the illicit relationship between defendant and Scarpa. Such evidence has no purpose other than to show defendant’s propensity to commit criminal acts and his bad character and will not be admitted.
The District Attorney’s fifth proffer involves actions in connection with the Scholnick homicide which the court has already ruled inadmissible.
Next, the District Attorney seeks to present evidence asserting that the defendant actively participated in Scarpa’s criminal enterprise by providing security in a bank burglary committed by members of Scarpa’s crew. While a sensational allegation, it alleges actions unrelated to the claim of providing secret police intelligence to Scarpa and its receipt has no relevance to that issue. It will not be admitted.
Next, the District Attorney seeks to offer evidence that the defendant had an inappropriate relationship and leaked confidential information to a person associated with the Bonano organized crime family. It is self-evident that such allegations have nothing to do with the defendant’s relationship with Scarpa and could be offered only for the purpose of establishing the defendant’s propensity to engage in similar improper acts. Clearly, that is not a basis for its receipt in this trial and it will not be admitted.
The District Attorney next seeks to offer evidence that the defendant alerted Scarpa to electronic surveillance at his social club and provided Scarpa with surveillance tapes made at that location. Notwithstanding the defense characterization of such evidence as only supporting a “generally corrupt” relationship with Scarpa, it is directly relevant to the People’s claim of an ongoing relationship between the defendant and Scarpa to provide Scarpa with secret police intelligence. Each item provided is not simply an independent act, even if independently criminal, but relevant to show a course of ongoing deal *1000 ings to provide secret intelligence, including information resulting in the four charged homicides. It is admissible not as proof of propensity but as evidence of an ongoing criminal contact regularly reaffirmed with the continuing disclosure of confidential police information.
For the same reason the People will be allowed to offer evidence that the defendant provided Scarpa with information from a sealed indictment. However, the People’s claim that it is further evidence of this corrupt relationship that the defendant failed to obtain information from Scarpa regarding the location of Scarpa’s fugitive son is utterly without probative value on the question of the defendant’s disclosure of information resulting in the four homicides in issue in this case and will not be admitted.
The District Attorney will be permitted to offer evidence in support of his claim that the defendant provided Scarpa with a frequency code for a radio scanner that permitted Scarpa to monitor communications between members of law enforcement surveillance teams. This is offered not as proof of a “generally corrupt” relationship but rather as evidence in support of the allegation that there existed a single inseparable plan, an ongoing criminal relationship to provide confidential intelligence information which encompasses both charged and uncharged crimes.
In response to the District Attorney’s claim that the defendant directed an agent to obtain information, which he then provided to Scarpa, the defense contends that the evidence will not bear out this claim. Whether the allegation is proven is a separate matter from its admissibility as evidence offered in support of that claim. Whether such evidence is sufficient to establish that this police intelligence information was provided to Scarpa is a question of proof to be determined by the factfinder.
For the same reason evidence will be received which the District Attorney contends will show that the defendant provided Scarpa with addresses of gang rivals knowing that Scarpa intended to use the information to murder these individuals.
The People have withdrawn their request to submit evidence that the defendant provided Scarpa with a copy of a federal complaint.
The People have withdrawn their request to submit evidence that the defendant joined Scarpa in celebrating the murder of a gang rival.
*1001 The defendant has withdrawn its objection to the admission of evidence showing that the defendant warned Scarpa that Carmine Imbriale was testifying against him and warned Scarpa that the informant was not to be harmed because Scarpa would be implicated if harm befell the cooperator.
The defense withdraws its objection to the presentment of evidence that the defendant used agents to obtain addresses relating to victims of Scarpa’s loansharking enterprise and provided the information to Scarpa.
As to the claim that the defendant got mad on losing Scarpa as an informant, this is neither a bad act nor is it probative of the claim that the defendant was providing Scarpa with confidential information, including information leading to the four charged murders. However, evidence that the defendant provided Scarpa with the identity of the source who had provided the information that led to his closing will be received in evidence in support of the claim that the defendant, on an ongoing basis, provided confidential information to Scarpa.
Evidence that the defendant reopened Scarpa as an informant by bypassing his superior is not relevant to establishing an ongoing corrupt relationship of providing confidential police information to Scarpa.
The defense objection to the admission of the defendant’s declaration, “we are going to win this thing,” by calling such evidence equivocal goes to the weight to be accorded such evidence, not to its admissibility. Whether or not this is a declaration against interest is a question for the factfinder to decide.
Similarly, the defendant’s declaration, “my guys did this thing,” is arguably an admission of a corrupt relationship between the defendant and Scarpa. To the extent it is ambiguous or has an innocent meaning, again those considerations affect the weight not the admissibility of the declaration. As to the People’s general claim that the defendant failed to take appropriate action during the war, including failing to assign appropriate resources to his investigatory efforts, this court is not going to sit as a supervising officer reviewing and assessing the adequacy of resources assigned to an investigation. Such a determination is beyond the competency of the court and, in any event, is unrelated to the claimed affirmative bad acts of the defendant in providing secret police intelligence to Scarpa.
Regarding the claim that the defendant did not terminate Scarpa as an informant upon learning of his involvement in the *1002 murder of Nicholas Grancio, the court reiterates that the failure to report criminal activity or terminate an informant because of his involvement in criminal activity is not directly probative of the claim that the defendant purposefully provided confidential police information so that Scarpa could eliminate those who posed a threat to him. Hiding misdeeds of an informant is not probative of the claim that the defendant affirmatively provided confidential intelligence information to Scarpa, which is at the heart of this case. It will be received only for the limited purpose of circumstantially establishing an ongoing criminal relationship between Scarpa and the defendant to provide confidential information.
Regarding the claim that the defendant ordered agents under his command to not make further arrests without express authorization from him, such action is irrelevant to the accusations involved in this case. It would improperly embroil this court in attempting to make judgments regarding what is and what is not an effective law enforcement technique, including the allocation of law enforcement resources.
The District Attorney seeks to present evidence that the defendant was unable to persuade Scarpa to provide information as to the location of two of his criminal associates who were fugitives and that the defendant improperly refused to terminate Scarpa because of this noncooperation. Criminal informants are invariably selective in the information they provide. It is specious to suggest that Scarpa’s unwillingness to provide information on some of his associates is somehow probative of the arrangement involving the defendant furnishing confidential law enforcement information to Scarpa. This claim is wholly irrelevant to the charges against the defendant and will not be received in evidence. If the District Attorney possesses admissible evidence that the defendant advised Scarpa that his associates would not be arrested if they “laid low,” that evidence will be admitted as further proof of the ongoing corrupt agency agreement in which the defendant allegedly provided confidential law enforcement information to Scarpa.
The District Attorney will be permitted to present evidence that the defendant attempted to warn Scarpa of his impending arrest. The District Attorney has withdrawn its request to submit evidence that the defendant attempted to convince the United States Attorney’s office to recommend that Scarpa be released on bail after his arrest.
Regarding the defendant’s alleged threat to a fellow agent regarding a possible Office of Professional Responsibility *1003 investigation, while such statements may have an innocent explanation, they may also be of slight evidentiary value as consciousness of the defendant’s guilt regarding leaks of information to Scarpa. As such, the evidence is admissible and the trier of fact will accord it such weight as it deems appropriate.
Evidence that the defendant, in defiance of orders by superiors, contacted or attempted to contact Linda Schiro and attempted to influence her in how to deal with the Office of Professional Responsibility investigation is relevant on the issue of the defendant’s consciousness of guilt and will be received by the court.
The People have withdrawn their request to submit evidence that the defendant, without permission, spoke with the journalist Jerry Capeci and such evidence is totally irrelevant to the charges in this case. Such withdrawal is certainly appropriate since it is more than a little ironic that in a case where an enormous amount of information has been leaked to the press, the District Attorney initially sought to proffer evidence of law enforcement leaks. It is ludicrous to suggest that leaks to the press by law enforcement officials and others in the criminal justice system including the defense is indicative of anything other than an all too common unfortunate public relations practice.
Evidence of the defendant’s purported illegal sale of firearms in 1976 is unrelated to the charges in this case and too remote in time to have any bearing on the defendant’s credibility, should he testify. On the other hand, evidence of subsequent efforts to conceal or destroy the official record of the Office of Professional Responsibility investigation is relevant and will be received.